**Spencer BLAKE, Plaintiff,**

**v.**

**Walt YACKOVICH, Clerk Sisneros, Manager Doe, Utah Department of Alcoholic Beverage Control, Bart Brown, and Mike Walker, Defendants.**

**Civ. No. 87–C–0648A.**

United States District Court, D. Utah, C.D.

March 31, 1988.

Brian M. Barnard, Salt Lake City, Utah, for plaintiff.

William F. Bannon, Asst. Utah Atty. Gen., Salt Lake City, Utah, for defendants.

ALDON J. ANDERSON, Senior District Judge.

## I. BACKGROUND

This dispute involves award of attorneys fees following resolution of a civil rights suit.

### A. *Claim for Relief*

Plaintiff, Spencer Blake, brought suit on July 21, 1987, claiming that Utah state employees, acting under color of state law and in accordance with official customs, policies, and practices, violated his constitutionally protected rights during several incidents occurring at a state liquor store in Salt Lake City, Utah. Plaintiff contended that he was deprived of 1) his right to equal and fair treatment by state officers and employees, 2) his right to use and enjoy a public place without violation of his due process rights, and 3) his right to be free from corporal punishment, as guaranteed by the fifth and fourteenth amendments of the United States Constitution, when he was banished from the state liquor store. *See* 42 U.S.C. § 1983 (1982). State tort claims of false arrest, false imprisonment, and assault and battery were also appended.

The office of the Attorney General, State of Utah, representing four of the five individual defendants and the Utah Department of Alcoholic Beverage Control, denied plaintiff's allegations and declared that any acts or omissions by state employees were reasonable, taken in good faith, and without intent to harm. Nevertheless, on September 3, 1987, the Assistant Attorney General, William F. Bannon, made an Offer of Judgment on behalf of four of the six defendants. The Offer of Judgment states in pertinent part

that plaintiff will not be refused service at any of the State Liquor Stores without provision for protection of his due process rights and [the state] hereby offers that judgment may enter against these individual defendants in the amount of $750.00 plus plaintiff's accrued costs.

Record, doc. 8, at 2. *See* Rule 68, Fed.R. Civ.P. The Offer of Judgment was accepted by plaintiff through his attorney, Brian M. Barnard, and the complaint against the remaining individual defendant and the Utah Department of Alcoholic Beverage Control was dismissed.

The awarding of attorneys fees has not been so handily put to rest. Mr. Barnard submitted three separate billings pursuant to 42 U.S.C. § 1988 (1982). It is undisputed that the State of Utah may be assessed costs by a federal court just like any other litigant. *Maher v. Gagne*, 448 U.S. 122, 132 n. 14, 100 S.Ct. 2570, 2576 n. 14, 65 L.Ed.2d 653 (1980). However, attorneys fees comprise the bulk of costs in this dispute and Mr. Bannon objected to their amount.

Despite two hearings held October 20, 1987 ["October Hearing"], and December 30, 1987 ["December Hearing"], the parties have not reached full agreement. This court now makes findings of fact in order to conclude this matter and to enter its final judgment.

### B. *First Billing*

Mr. Barnard, an experienced civil rights attorney, first requested that the court award costs of $4,441.50 for attorneys fees and $223.00 for court costs. Mr. Barnard's hours were billed at $175.00 per hour, and those of an associate, Mr. Nolan, were billed at $80.00 per hour. Record, doc. 48,

242

exh. P–1. The hourly billings extended from August 22, 1986, through August 31, 1987, and covered services rendered until just before the settlement offer was made ["First Billing"].

Mr. Bannon strenuously objected to the First Billing, stating that he offered to settle for $750.00 because "there was a good possibility that the plaintiff would recover on some of his claims and we wanted to stop the clock from running." Transcript, October 20, 1987, at 35. Mr. Bannon confessed: "I will be quite honest ..., it was my inexperience with the [section 1988] attorney's fees language[.] I drafted this [O]ffer of [J]udgment precisely the way [Rule 68] says that you have to word it ... without realizing that in [section 1983 suits] accrued costs means attorney's fees." *Id.* at 33. *Marek v. Chesny,* 473 U.S. 1, 9–10 n. 2, 105 S.Ct. 3012, 3017 n. 2, 87 L.Ed.2d 1 (1985) ("Rule 68 does not come with a definition of costs; rather, it incorporates the definition of costs that otherwise applies to the case"). According to 42 U.S.C. § 1988, attorney's fees are allowed as part of the costs in civil rights actions. *Hensley v. Eckerhart,* 461 U.S. 424, 426, 103 S.Ct. 1933, 1935, 76 L.Ed.2d 40 (1983). Mr. Bannon contended that he was left with "a plaintiff that is willing to accept $750 and settlement of his claims but an attorney ... [who] is not willing to negotiate" his part of the award. Transcript, October 20, 1987, at 34.

"A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. at 437, 103 S.Ct. at 1941. However, Mr. Barnard argued that the deterrent value in this kind of suit is consistent with the statutory purpose of section 1983 and justifies his earned fees. *See Fleet Inv. Co., Inc. v. Rogers,* 620 F.2d 792, 794 (10th Cir.1980) (vindication of a public interest also underlies statutory authorization of attorneys fees). Mr. Barnard admitted that, in one earlier suit, he had collected approximately $3,000 in attorneys fees following a one dollar damage claim, but argues that both suits demonstrate instances where a "nominal damage award still entitles us to reasonable attor-

ney's fees." Transcript, October 20, 1987, at 24.

 This court recognizes that attorneys fees may be regarded as part of any costs independent of the settlement itself, *see Marek v. Chesny,* 473 U.S. at 9, 105 S.Ct. at 3017, even though customary negotiating practices might lead unwary attorneys to assume otherwise. Furthermore, although plaintiff's monetary award was relatively small, "Congress did not intend for fees in civil rights cases ... to depend on obtaining substantial monetary relief." *City of Riverside v. Rivera,* 477 U.S. 561, 575, 106 S.Ct. 2688, 2695, 91 L.Ed.2d 466 (1986). *See Fleet Inv. Co., Inc. v. Rogers,* 620 F.2d at 794 ("[t]he value of an attorney's services is not only measured by the amount of the recovery to plaintiff...."). Thus, after negotiation and with the parties' agreement, the court approved attorneys fees in the First Billing for the full number of submitted hours. While Mr. Nolan's hourly rate of $80.00 per hour was not contested, the parties agreed that Mr. Barnard's services should be reimbursed at a lower negotiated rate of $125.00 per hour. Transcript, October 20, 1987, at 43. This fee totals $3,196.50. *See* Appendix A.

### C. *Second and Third Billings*

Mr. Barnard submitted two additional billings. Since the merits of the case were resolved when plaintiff accepted the Offer of Judgment on September 10, 1987, these billings related almost entirely to Mr. Barnard's fee collection activities.

[H]ours not spent representing the client are at best on the borderline of what Congress intended to be compensable. There is a difference, however, between the time necessary to prepare and submit an application for fees, and hours spent disputing a fee award. The latter are especially suspect....

*Mares v. Credit Bureau,* 801 F.2d 1197, 1206 (10th Cir.1986).

The second billing ["Second Billing"] showed current fees of $1,583.50 from September 7, 1987, through October 20, 1987, the day of the October Hearing. Record, doc. 48, exh. P–2. It initially appeared that

accord had been reached on all attorneys fees, but Mr. Bannon later indicated that his agreement extended only to fees itemized in the First Billing. Mr. Bannon entered an "Objection to Amended Order and Judgment" stating that the Second Billing was delivered to Mr. Bannon's

> receptionist less than three hours before the [First H]earing and ... was not actually delivered to [him] until after the hearing on fees. Although ... entitled to fees for preparing his bill of costs, ... [Mr. Barnard] is not entitled to fees incurred in defending an unreasonable fee request which was reduced at [H]earing.

Record, doc. 38, at 2. Mr. Barnard then continued his fee collection efforts and submitted a third billing ["Third Billing"] which listed additional fees of $1,294.50 extending from October 23, 1987, through December 30, 1987, the day of the December Hearing. Record, doc. 48, exh. P–7.

Mr. Bannon essentially claims that Mr. Barnard "padded" his bill. He states that some items were unnecessary and, in other instances, the Billings lack enough specificity to determine whether the items themselves or the time billed was reasonable. *See generally* Transcript, December 30, 1987.

Mr. Barnard responds that his bookkeeping procedures met community standards and that "itemizations are as detailed or more detailed than [what] most attorneys do in the practice of law." *Id.* at 14. Furthermore, Mr. Barnard points out that he took the witness stand and gave Mr. Bannon full opportunity for cross-examination on any item that was questionable or needed clarification. Mr. Barnard claims that it is inappropriate to complain after-the-fact that the Billings are confusing or misleading.

After the December Hearing, this court took the matter under advisement and ruled that no more fees would be assessed pending a final determination. *Id.* at 4. With this background and the parties' arguments in mind, the court analyzed the items on Mr. Barnard's Second and Third Billing and the hourly rates which should apply. *See Hensley v. Eckerhart*, 461 U.S.

at 437, 103 S.Ct. at 1941. (fee awards are essentially factual matters within the discretion of the trial court); *Mares v. Credit Bureau*, 801 F.2d at 1206 (district court has great leeway in establishing fees) (citations omitted).

## II. ANALYSIS

The award of attorneys "fees is not an exact science." *Mares v. Credit Bureau*, 801 F.2d at 1210. The usual "benchmark ... is that the attorney's fee must be 'reasonable.' " *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, ——, 106 S.Ct. 3088, 3096–97, 92 L.Ed.2d 439 (1986). The lodestar approach—multiplying the reasonable hours times a reasonable rate—carries a strong presumption that this benchmark has been met, *id.* 106 S.Ct. at 3098, and forms the basis for this court's analysis. *Hensley v. Eckerhart*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9 (other factors "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate") (citations omitted).

### A. Reasonable Hours

The parties reached agreement on several of the billable hours. Mr. Barnard withdrew his hours billed for secretarial time. Mr. Bannon, in turn, indicated that he had no objection to several of Mr. Barnard's hourly claims. *See* Transcript, December 30, 1987, at 5, 6, 12. The remaining hours were billed by Mr. Barnard himself and by an associate attorney, Mr. Nolan. These have been examined item-by-item, looking at the description of services provided by Mr. Barnard, the objections made by Mr. Bannon, and the circumstances of the dispute itself. *Mares v. Credit Bureau*, 801 F.2d at 1210 (hours should be viewed "in the context of the litigation as a whole" and not in isolation). Most of the services were described in enough detail for this court—familiar with the circumstances of this case—to make a determination as to reasonableness.

### 1. *Mr. Barnard's Hours*

■ The majority of hours listed in the Second and Third Billing were attributable to Mr. Barnard's time spent preparing and

defending his fees for services. He billed a total of 6.9 hours on the Second Billing and 6.94 hours on the Third Billing. Record, doc. 48, exh's P–2, P–7. Most of these hours appear to have been reasonably incurred. For example, although Mr. Bannon objects to "draft fee affidavit, 55 hours ... since it was a stock affidavit," Transcript, December 30, 1987, at 8–9, an examination of the Second Billing shows that this item was billed at only .55 hours or just slightly more than one-half hour on September 23, 1987. In the court's estimation, this was a reasonable expenditure of time for a document of this type.

■ However, several other items seem unnecessary. On October 8, 1987, Mr. Barnard spent .1 hour to "receive pleading." Record, doc. 48, exh. P–2. The court agrees with Mr. Bannon that this description does not provide a reasonable basis for a necessary service. *See* Transcript, December 30, 1987, at 10. Similarly, the court disallows an estimated amount of time which might be attributed to drafting a second fee affidavit from one of Mr. Barnard's experts. Record, doc. 41. This affidavit attested to the reasonableness of the hourly rates and time expended in preparing various documents. The court finds that the five original affidavits from experts were sufficient to establish Mr. Barnard's entitlement to a fee commensurate with his experience. *See* Record, doc's 28, 29, 33, 34, 35. *See also Jacobs v. Mancuso,* 825 F.2d 559, 563 (1st Cir.1987) (hours billed were excessive where five affidavits were used and two were sufficient). Furthermore, two affidavits submitted by Mr. Barnard himself, record, doc's 32, 19, along with the three Billings and the two Hearings, provided ample evidence for this court to review the various items charged. An additional expert's opinion is unnecessary. Therefore, only .5 hour rather than 1 hour is allowed on the billable hours for October 23, 1987. Record, doc. 48, exh. P–7.

■ Mr. Bannon also challenged as unnecessary the Motion for Summary Judgment filed by Mr. Barnard on November 10, 1987. Record, doc. 45. The court observes that this motion does not conform to Rule 5, Motion Practice, Rules of Practice of the United States Courts for the District of Utah (Feb. 1, 1980). The court also agrees that, since a hearing on the fee dispute was already scheduled, a Motion for Summary Judgment on this matter was unnecessary. Therefore, Mr. Barnard's hours on November 6, 1987, are reduced from .35 hours to .10 hours, an estimated allowable time for the remaining billable items. Similarly, 1 hour billed on December 29, 1987, to prepare for the hearing and to prepare witnesses is denied, since it appears to the court that sufficient time had already been spent to prepare for the December Hearing. Record, doc. 48, exh. P–7.

### 2. *Mr. Nolan's Hours*

■ Mr. Barnard billed 3.75 hours and 1 hour for Mr. Nolan's time according to the Second and Third Billings, respectively. Record, doc. 48, exh's P–2, P–7. The participation of a second attorney is compensable when that assistance is necessary to properly present the case. *Cf. Mares v. Credit Bureau,* 801 F.2d at 1207 (but where "an attorney's only cognizable contribution to the litigation is his search for fees ... no award can be made"). None of those services in the Second Billing appear duplicative or unnecessary. In fact, use of an associate at a lower hourly rate reduced the amount billed both in resolving the merits of this case and in the dispute over attorneys fees. However, 1 hour spent by Mr. Nolan on December 17, 1987, to "prepare for hearing" is questionable. At this late stage of the dispute, and given Mr. Barnard's experience and expertise, his preparation should have been adequate without the assistance of another attorney. *Cf. Hart v. Bourque,* 798 F.2d 519, 523 (1st Cir.1986) (time for several attorneys "in a courtroom or conference, when one would do, 'may obviously be discounted'") (citation omitted). Since a necessary service is not specified, compensation for this hour is denied. Record, doc. 48, exh. P–7.

Therefore, the court finds that all of Mr. Nolan's hours are reasonable on the Second

Billing, but that no hours are allowable on the Third Billing.

### 3. *Summary of Hours*

In summary, Mr. Barnard's time was reasonable in the amount of 6.8 hours for the Second Billing and 5.19 hours for the Third Billing. This court finds that 3.75 billed hours for the associate attorney, Mr. Nolan, were reasonable. *See* Appendix A. *Jacobs v. Mancuso*, 825 F.2d at 563 (precise hour-by-hour calculations not necessary as long as the court provides a clear explanation of its reasoning).

### B. Reasonable Rates

■ "[T]he court may establish … multiple hourly rates to reflect differences in the types of services performed for the client." *Jacobs v. Mancuso*, 825 F.2d at 561 n. 3 (citations omitted). The United States Supreme Court has affirmed an award of fees based upon three separate hourly rates when the work ranged from " 'most difficult' " to that " 'requir[ing] little or no legal ability.' " *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, ——, 106 S.Ct. at 3092, 3096. Thus, while this court approved a negotiated hourly rate of $125.00 for Mr. Barnard's work on the merits of this case, a lower fee is warranted for services which are almost completely related to collection of fees. Accordingly, this court sets Mr. Barnard's hourly rate at $100.00 and Mr. Nolan's hourly rate at $70.00 for any allowable hours.

Mr. Barnard is awarded $680.00 on the Second Billing and $519.00 on the Third Billing. An award of $262.50 on the Second Billing is made for Mr. Nolan's services. *See* Appendix A.

### III. CONCLUSION

Judgment for the plaintiff, Spencer Blake, is entered in the amount of $750.00, pursuant to the parties' settlement agreement. Undisputed court costs of $223.00 are also awarded to plaintiff's attorney, Mr. Barnard. Using the negotiated fees from the First Billing and the court's lodestar calculations from the Second and Third Billings, the court orders $4658.00 be paid to Mr. Barnard. *See* Appendix A. Other outstanding motions are denied.

### APPENDIX A

#### Attorneys Fees

FIRST BILLING (Record, document 48, exhibit P–1) *
 MR. BARNARD

| | Hours | Rate | Amount |
|---|---|---|---|
| Claimed .... | 24.1 | $175.00 | |
| Disallowed.. | 0 | −50.00 | |
| Stipulated .. | 24.1 | $125.00 | $3012.50 |

 MR. NOLAN

| | Hours | Rate | Amount |
|---|---|---|---|
| Claimed .... | 2.3 | $ 80.00 | |
| Disallowed.. | 0 | −0.00 | |
| Stipulated .. | 2.3 | $ 80.00 | $ 184.00 |

TOTAL STIPULATED FEES ............................................. $3196.50

SECOND BILLING (Record, document 48, exhibit P–2) *
 MR. BARNARD

| | Hours | Rate | Amount |
|---|---|---|---|
| Claimed .... | 6.9 | $175.00 | |
| Disallowed.. | − .1 | − 75.-00 | |
| Allowed .... | 6.8 | $100.00 | $ 680.00 |

 MR. NOLAN

| | Hours | Rate | Amount |
|---|---|---|---|
| Claimed .... | 3.75 | $ 80.00 | |
| Disallowed.. | 0 | −10.00 | |
| Allowed .... | 3.75 | $ 70.00 | $ 262.50 |

TOTAL ALLOWED FEES ............................................. $ 942.50

THIRD BILLING (Record, document 48, exhibit P–7) *

**MR. BARNARD**

| | Hours | Rate | Amount |
|---|---|---|---|
| Claimed .... | 6.94 | $175.00 | |
| Disallowed.. | −1.75 | −75.00 | |
| Allowed .... | 5.19 | $100.00 | $ 519.00 |

**MR. NOLAN**

| | Hours | Rate | Amount |
|---|---|---|---|
| Claimed .... | 1.00 | $ 80.00 | |
| Disallowed.. | −1.00 | −10.00 | |
| Allowed .... | 0.00 | $ 70.00 | $ 0.00 |

TOTAL ALLOWED FEES............................................... $ 519.00

TOTAL ATTORNEYS FEES:

First Billing Stipulated Fees ........................ $3196.50

Second and Third Billing Awarded Fees............. 1461.50

TOTAL ...................................................... $4658.00

* For a description of the parties' negotiations in reaching agreement on stipulated fees for the First Billing, see section I–B of the opinion. The court's analysis in determining reasonable fees for the Second and Third Billings is set forth in section II of the opinion.