**James Richard ERDMAN,**
**Plaintiff–Appellant,**

v.

**COCHISE COUNTY, ARIZONA; and**
**City of Douglas, Arizona,**
**Defendants–Appellees.**

No. 89–16015.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1990.

Decided Feb. 22, 1991.

Tony K. Behrens, Sierra Vista, Ariz., for plaintiff-appellant.

Steven Weatherspoon, Chandler, Tullar, Udall & Redhair, Tucson, Ariz., for defendant-appellee Cochise County.

Arthur C. Atonna, Douglas, Ariz., for defendant-appellee City of Douglas.

Before GOODWIN, C.J., ALDISERT * and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

James Erdman appeals from the district court's rescission of an Offer of Judgment extended by the City of Douglas, Arizona under Rule 68 and accepted by him. In addition, he appeals the grant of summary judgment to both defendants on the merits of his § 1983 claim for unlawful incarceration. We reverse on the Rule 68 claim, but affirm on the merits.

### FACTS

Erdman was arrested on July 14, 1987 in the City of Douglas, Cochise County, Arizona, and taken into custody. He was booked on two charges: driving while intoxicated (second offense), and driving with a suspended license. Although the charges carried a minimum sentence of 60 days in jail, Douglas City Magistrate Bradshaw permitted Erdman to plead guilty to misde-

meanor charges and released him on probation after two days in custody.

Subsequently, he was indicted by a Cochise County grand jury on a felony count for the same offense, as well as a second felony count of resisting arrest, and arrest warrants were issued. A Cochise County Deputy Sheriff discovered the mix-up when he tried to serve Erdman at the city jail, but failed to notify the prosecutor or the court that Erdman's case had already been adjudicated as a misdemeanor. Erdman was never notified of the outstanding arrest warrants.

Some months later, Erdman was arrested for disorderly conduct in Yuma, and a computer check revealed the outstanding bench warrant. The Yuma municipal court refused to release him on bail, and held him for nine days while his family unsuccessfully attempted to straighten out the error. Eventually Erdman was taken to Cochise County, arraigned and allowed to post bail after three more days. He promptly contacted a public defender, who was able to get the felony charges dismissed.

Through attorney Tony Behrens, Erdman then filed a claim for monetary damages and injunctive relief against both the City and the County under 42 U.S.C. § 1983, claiming that his incarceration constituted double jeopardy and violated the Fourth and Fourteenth Amendments. Discovery and settlement negotiations commenced. Thereafter, the City made an Offer of Judgment, which stated:

> The City of Douglas, pursuant to Rule 68, Federal Rules of Civil Procedure, offers to allow judgment to be taken against the City of Douglas for the sum of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500.00) *with costs now accrued.*

(Emphasis added). As the district court found, both Erdman and his attorney construed the offer to mean that Erdman himself would receive the full $7,500, and that Behrens would be entitled to an additional

* The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

sum as reasonable attorney fees under the "costs" provision of 42 U.S.C. § 1988. Erdman promptly filed a Notice of Acceptance with the Court, along with a Motion for Determination of Costs.

In response, the City filed a Motion in Opposition and a "Notice of Unacceptable Acceptance," claiming that its offer had been "inartfully drafted" and that it had intended to *include* attorney fees in its lump sum offer. The court accepted the City's protestations, and ordered that the offer be rescinded based on "mutual mistake," although no argument was heard or evidence taken. The court held that:

> any ambiguity in the terms of the offer is interpreted in favor of the offeree unless the offeree has reason to know of the offeror's intentions. In the present case, although it is not clear that the plaintiff knew of the defendant's intentions, there is some evidence that the plaintiff had reason to know that its interpretation of the offer differed materially from the defendant's.

After summarizing the City's evidence, the court found:

> Defendant clearly intended its offer to include attorney fees and costs. Plaintiff obviously attached materially different meanings to defendant's offer as evidenced by plaintiff's filing of its Motion for Determination of Costs in conjunction with its Notice of Acceptance.

In rescinding the offer, the district court relied on an Eighth Circuit case which involved two Rule 68 offers, *Radecki v. Amoco Oil Co.*, 858 F.2d 397 (8th Cir.1988). In that case, the original offer was for a sum "including costs now accrued," and did not expressly mention attorney fees. The next day, Amoco attempted to clarify its offer to clearly state that all fees had been

included, but the district court allowed Radecki to accept the original, unmodified offer. The Court of Appeals reversed, holding that the second offer was permissible since it merely clarified Amoco's original intent, and that Radecki's attempt to accept the ambiguous offer was invalid. 858 F.2d at 400.

## I. *The Offer of Judgment*

Although issues involving construction of Rule 68 offers are reviewed *de novo*, disputed factual findings concerning the circumstances under which the offer was made are usually reviewed for clear error.[1] *Simon v. Intercontinental Transport B.V.*, 882 F.2d 1435, 1439 (9th Cir.1989). However, no deference need be accorded in the summary judgment setting where no evidentiary hearing was ever held on the settlement issue.[2] *Heiniger v. City of Phoenix*, 625 F.2d 842, 843–44 (9th Cir. 1980).

■ This case presents an issue of first impression in this circuit: whether a Rule 68 Offer of Judgment may be withdrawn after acceptance based on the offeror's failure to recognize that "costs" in actions under 42 U.S.C. § 1983 automatically include attorney fees under 42 U.S.C. § 1988. We hold that the City's drafting error should be construed against it, rather than against the plaintiff.

Erdman was entitled to rely on the plain language of the offer he accepted, "$7,500 with costs now accrued," which under *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), entitles him to a reasonable attorney's fee award *in addition to* the lump sum named in the offer.[3] The City alleges that plaintiff's counsel somehow "laid in waiting" to trick the City into offering more than it meant to. It con-

---

**1.** As a preliminary matter, we reject the City's contention that the Rule 68 issue is not properly before this court. Erdman's appeal from the final judgment brings up all interlocutory orders and rulings by the district court, including the order which rescinded the City's Rule 68 Offer. *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir.1984).

**2.** We have stated that "[w]here material facts concerning the *existence* or *terms* of an agree-

ment to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir.1987). However, no such hearing was requested here by either side.

**3.** A figure of $16,946 for fees accrued was suggested in a May 2 letter from Behrens to the Douglas City Attorney. In the Motion for Determination of Costs he filed May 16, Behrens requested $23,880 in fees plus $1432 in costs, for a total of $25,200.

tends that "with costs" was intended to mean "including costs" rather than "plus costs," and argues that its "inartful draftsmanship" constitutes grounds for rescission since the opposing attorney should have realized that the offer was misleadingly drafted.

Both sides agree that Rule 68's cost-shifting provision is generally intended to encourage settlement by providing both defendants and plaintiffs with strong incentives to end the litigation early. The stakes for a plaintiff who receives an Offer of Judgment under Rule 68 are especially high in civil rights cases, since 42 U.S.C. § 1988 specifically authorizes attorneys' fees to be awarded to prevailing plaintiffs as an element of "costs." The effect of Rule 68 in civil rights cases encourages settlements rather than engaging in costly litigation.

*Marek*, the leading case on this issue, confirms this trade-off based on the history and intent behind Rule 68. "Application of Rule 68 will serve as a disincentive for the plaintiff's attorney to continue litigation after the defendant makes a settlement offer," and "will require plaintiffs to 'think very hard' about whether continued litigation is worthwhile." 473 U.S. at 10–11, 105 S.Ct. at 3017–18. *Marek* specifically held that the Rule 68 term "costs" includes attorney fees under 42 U.S.C. §§ 1983 and 1988, but allowed defendants to choose whether to make all-inclusive lump-sum offers or name a damages figure and allow fees to be added later.

> If an offer recites that costs are included or specifies an amount for costs, and the plaintiff accepts the offer, the judgment will necessarily include costs; if the offer does not state that costs are included and an amount for costs is not specified, the court will be obliged by the terms of the Rule to include in its judgment an additional amount which in its discretion it determines to be sufficient to cover the costs.... Accordingly, it is immaterial whether the offer recites that costs are included, whether it specifies the amount

> ... or, for that matter whether it refers to costs at all.

*Id.* at 6, 105 S.Ct. at 3015 (citation omitted).

 Typically, a settlement agreement is analyzed in the same manner as any contract, i.e., any ambiguities are construed against the drafter. Where necessary, district courts are authorized to look to extrinsic evidence to clarify ambiguities as to the intended meaning of material terms. *Callie*, 829 F.2d at 890–91. Rule 68 offers, however, differ from contracts with respect to attorney fees. We have held that any waiver or limitation of attorney fees in settlements of § 1983 cases must be clear and unambiguous. *Muckleshoot Tribe v. Puget Sound Power & Light Co.*, 875 F.2d 695, 698 (9th Cir.1989).

*Muckleshoot* was a § 1983 case involving Indian water rights. After four years of negotiations, the parties agreed on a consent decree which said nothing about fees or costs. In resolving the subsequent attorney fee litigation, we stated that "any party wishing to foreclose a suit for § 1988 fees must negotiate a provision waiving attorneys' fees." *Id.* We placed the burden squarely on the defendant to demonstrate by "clear language in the release" that fees had been waived or otherwise negotiated.

> [I]f the language in the release is unclear or ambiguous, surrounding circumstances may clearly manifest the intent of the parties that attorneys' fees be waived.... Conversely, if the defendant can provide clear evidence that demonstrates that an ambiguous clause was intended by *both* parties to provide for the waiver of fees, then the defendant is absolved of liability.

*Id.* We see no reason why the logic of *Muckleshoot* should not apply to all civil rights settlements, whether settled by negotiated consent decrees or Rule 68 offers. As stated by the Northern District of Illinois when confronted with a similar situation, " 'it would be ludicrous and manifestly unjust to allow the Defendants to argue after the fact that their offer really means more than it says.' " *Rateree v. Rockett*, 668 F.Supp. 1155, 1159 (N.D.Ill.1987), quot-

ing plaintiff's counsel. *Accord, Shorter v. Valley Bank and Trust,* 678 F.Supp. 714 (N.D.Ill.1988); *Blake v. Yackovich,* 683 F.Supp. 240 (D.C.Utah 1988); *Tyler v. Meola,* 113 F.R.D. 184 (N.D.Ohio 1986). *Cf. Corder v. Gates,* 688 F.Supp. 1418 (C.D. Cal.1988) (rejecting Rule 68 offer because "no meeting of the minds").

The case relied on by the district court here, *Radecki v. Amoco Oil Co.,* is distinguishable both because it did not involve the civil rights fee statute, 42 U.S.C. § 1988,[4] and because there was no mutual assent in that the plaintiff attempted to accept an offer that did not include attorney fees, rather than the offer actually tendered. *Id.* at 401–03. We hold that as the terms of the accepted offer here did not clearly exclude an additional attorney fee award as required by *Muckleshoot,* the City is bound by the letter of its agreement and must pay Erdman's reasonable attorney fees in addition to the amount contained in its offer.

## II. *Summary Judgment*

Grants of summary judgment are reviewed de novo. *Kruso v. International Telephone & Telegraph Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). The appellate court must view the evidence in the light most favorable to the plaintiff, and determine whether there are any disputed issues of material fact and whether the relevant substantive law was correctly applied. *Tzung v. State Farm Fire and Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989). We draw all possible inferences in favor of Erdman, the nonmoving party. *Gee v. Tenneco, Inc.,* 615 F.2d 857, 859 (9th Cir.1980).

After rescinding the Rule 68 offer as discussed above, the district court granted summary judgment on the merits to both defendants. It held that the City Magistrate's error in allowing Erdman to plead

guilty to the misdemeanor was the cause of all the confusion.

Neither Cochise County or the City of Douglas are required to have a policy to protect against the mistakes, errors, or illegal actions of their judges or magistrates. As noted by U.S. Supreme Court in *City of Oklahoma City v. Tuttle,* "the word 'policy' generally implies a course of action consciously chosen from among various alternatives ..." 471 U.S. 808 [105 S.Ct. 2427, 85 L.Ed.2d 791] (1985). In this case, no policy or custom, (or even the absence of a policy or custom), of Cochise County or the City of Douglas deprived plaintiff of his constitutional rights.

We agree. However, in light of our decision that the City of Douglas is bound by its offer and Erdman's acceptance, our consideration of the summary judgment argument is limited to the judgment in favor of Cochise County.

After the Supreme Court extended § 1983 liability to municipalities in *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a substantial body of case law on errors and other acts by police, prosecutors, and other city employees has developed. *See, e.g., Zinermon v. Burch,* — U.S. —, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (state mental hospital admission procedures); *City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (failure to train police when to obtain medical help); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (prosecutor's authorization to police officers to chop down the door of physician's medical clinic with an axe); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (failure to train police officers on using deadly force); *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (false imprisonment).[5]

---

4. *Radecki* was brought under the Petroleum Marketing Practices Act, 15 U.S.C. § 2805(d)(1), which unlike § 1988 does not include attorney fees in its definition of "costs." *See Radecki,* 858 F.2d at 400 n. 2.

5. The Ninth Circuit has also been prolific in this area. *See, e.g., Wood v. Ostrander,* 879 F.2d 583 (9th Cir.1989) (police officer's abandonment of citizen in dangerous neighborhood), *cert. denied,* — U.S. —, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990); *Tanner v. Heise,* 879 F.2d 572 (9th

In order to establish Erdman's right to proceed to trial on his municipal liability claim, the court must first determine that a constitutional violation has occurred, i.e., that the County violated some constitutionally imposed duty to Erdman by erroneously transferring and detaining him for a previously adjudicated crime. *See McCollan,* 443 U.S. at 142, 99 S.Ct. at 2693 (distinguishing between tort liability for false imprisonment and § 1983 liability). *Respondeat superior* does not attach to municipalities, therefore Erdman must also demonstrate that his deprivation resulted from an official policy or custom established by a municipal policymaker possessed with final authority to establish that policy. *Tuttle,* 471 U.S. at 824, 105 S.Ct. at 2436; *Meehan,* 856 F.2d at 107.

■ In *Baker v. McCollan,* the Supreme Court confronted facts similar to these. There, the plaintiff sued a sheriff for wrongful detention in the county jail caused by a failure to institute adequate identification procedures. 443 U.S. at 141–42, 99 S.Ct. at 2693–94. After repeated complaints, the police finally checked the plaintiff's appearance against a file photograph of the wanted man and released him. *Id.* at 141, 144, 99 S.Ct. at 2693, 2694. The Court held that McCollan's detention was not an actionable due process violation under § 1983, because the detention was pursuant to a valid warrant and was not unduly long. *Id.* at 144–45, 99 S.Ct. at 2694–95. The Court emphasized that the Constitution does not require "a sheriff executing an arrest warrant ... to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Id.* at 145–46, 99 S.Ct. at 2695–96.

It is clear that *Baker* defeats Erdman's claim. The second arrest alone was not a constitutional violation because it was pursuant to a facially valid bench warrant. *Baker,* 443 U.S. at 144, 99 S.Ct. at 2694. Unlike the plaintiff in *Wood v. Ostrander,* 879 F.2d at 588, Erdman has not claimed that any particular official acted with "deliberate indifference" or "callous disregard" of his rights, nor has he charged Cochise County with failure to train its officers or prosecutors. *Cf. Tanner v. Heise,* 879 F.2d at 582.

■ Even if his second incarceration did amount to a constitutional deprivation, Erdman has not demonstrated a "direct causal link" to any municipal policy or custom as required by *Canton,* 489 U.S. at 385, 109 S.Ct. at 1202.[6] His attempts to elevate the County Attorney and Sheriff to the status of "policymakers" miss the mark, since he must first establish the "policy" they are alleged to have made. No evidence was presented to indicate that the County habitually misfiles paperwork so as to result in dual arrests for the same crime, or that the unfortunate combination of errors which occurred here was intentional.

Erdman's reliance on *Zinermon v. Burch* is also inapposite. That case dealt with procedures required to ascertain the competency of patients who voluntarily commit themselves to state mental hospitals. Erdman argues that his situation was as foreseeable as that in *Zinermon.* However, *Zinermon* itself explicitly disclaimed any attempt to regulate "officials' random and unauthorized violation of state laws," such as those which resulted in Erdman's second arrest. *See* 110 S.Ct. at 989.

Erdman's second incarceration seems to have been an isolated incident caused by simple negligence, which does not establish liability under 42 U.S.C. § 1983. As the Supreme Court commented in *Canton v. Harris,* "plainly, adequately trained officers occasionally make mistakes; the fact

---

Cir.1989) (failure to train officers properly on arrest procedures for misdemeanor traffic violators); *Meehan v. County of Los Angeles,* 856 F.2d 102 (9th Cir.1988) (isolated police assaults); *Bergquist v. County of Cochise,* 806 F.2d 1364 (9th Cir.1986) (officer's destruction of residential property in executing search warrant).

**6.** Both defendants also urge this court to affirm the district court's conclusion that Erdman's second incarceration could not be a deprivation of liberty as a matter of law, because his original plea bargain was illegal and he served a total of only twelve days instead of the minimum statutory sentence. Since no "causal link" to a particular municipal policy has been established, we need not reach the issue of whether any deprivation occurred under these circumstances.

that they do says little about … the legal basis for holding the city liable." 489 U.S. at 391, 109 S.Ct. at 1206. Erdman's deprivation, if any, was caused by the unfortunate and inadvertent lack of communication between the City Magistrate, the County Attorney, and the Sheriff. Such mistakes do not amount to the "conscious choice" required to establish a municipal policy or custom under *Monell*, and liability does not attach under § 1983 for erroneous imprisonment alone. We therefore affirm the grant of summary judgment.

## ATTORNEY FEES

As the prevailing party on the Rule 68 issue, Erdman is entitled to partial attorney fees for this appeal under 42 U.S.C. § 1988. However, since plaintiff's appeal is not "frivolous" under *Lear v. Murphy*, 844 F.2d 628, 635 (9th Cir.1988), neither the City nor the County are awarded attorney fees. Each party shall bear its own court costs.

## CONCLUSION

The City's Rule 68 Offer of Judgment is reinstated, and the case REMANDED for a hearing on the amount of "costs" due under the Offer, including attorney fees. The grant of summary judgment on the issue of county liability is

AFFIRMED.