Julio ALVARADO

v.

William BRATTON, et al.

No. CV 06 7812 PA (RCX).

United States District Court,
C.D. California.

May 3, 2007.

Donald W. Cook, Robert Mann, Mann and Cook, Los Angeles, CA, for Plaintiff.

Cory M. Brente, Michael L. Claessens, Rockard J. Delgadillo, Surekha A. Pessis, Los Angeles City Attorney's Office, Los Angeles, CA, Scott Caron, Franscell Strickland Roberts and Lawrence, Glendale, CA, for Defendants.

ANDERSON, District Judge.

**Proceedings:** MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed by defendants County of Los Angeles, Los Angeles County Sheriff's Department, Sheriff Lee Baca, and William Stonich,

Larry Waldie, Doyle Campbell, Paul Tanaka, Charles Jackson, Marc Klugman, all of whom either were or are high-ranking officials within the Los Angeles County Sheriff's Department (collectively the "County Defendants"). The County Defendants challenge the sufficiency of the putative class action Complaint filed by plaintiff Julio Alvarado ("Plaintiff") on behalf of himself and all others similarly situated.[1]

Plaintiff alleges that he was arrested on Saturday, November 5, 2005, by LAPD officers on a warrant issued for Walfre Hernandez. Plaintiff's name appeared as an alias on the arrest warrant for Mr. Hernandez. Plaintiff believes that his name appeared as an alias for Mr. Hernandez because he was the victim of identity theft. Although Plaintiff claims to have repeatedly told LAPD personnel that he was not the subject of the warrant, he was held for 3 days by the LAPD before being transferred to the Los Angeles County Sheriff's Department. Plaintiff was held for an additional day by the Sheriff's Department before being released on Tuesday, November 9, 2005.

When he was first booked, LAPD personnel "livescanned" Plaintiff to obtain a digital image of his fingerprints. According to Plaintiff, livescanning allows law enforcement officials to confirm an arrestee's identity within minutes. Plaintiff believes that through livescanning, law enforcement officials can quickly establish whether an arrestee who claims not to be the subject of a warrant is being properly held. Plaintiff asserts that by not using the information available to them to confirm that he was being wrongly held, defendants violated his civil rights. Specifically, the Complaint contains claims

pursuant to 42 U.S.C. § 1983 for unreasonable search and seizure, false arrest, and due process violations under the Fourth and Fourteenth Amendments to the Constitution. The Complaint also asserts supplemental state law claims for wrongful arrest/detention pursuant to the California Constitution, a violation of California Civil Code section 52.1, false imprisonment, and injunctive and declaratory relief.

█ In their Motion to Dismiss, the County Defendants argue that Plaintiff has failed to state a viable federal claim because the Supreme Court, in *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), ruled that those arrested on facially valid warrants and held for a limited period of time suffer no constitutionally cognizable injury. *See also Erdman v. Cochise County*, 926 F.2d 877 (9th Cir.1991) (concluding that *Baker* barred arrestee's claim that he was wrongfully incarcerated for twelve days pursuant to a facially valid arrest warrant). The County Defendants also contend that Plaintiff's state law claims fail because they are barred by a variety of immunities or otherwise fail to state a claim.

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," Fed.R.Civ.P. 12(b)(6), they also require all pleadings to be "construed so as to do substantial justice." Fed. R.Civ.P. 8(f). "Given the Federal Rules' simplified standard for pleading, '[a] court

---

1. The Complaint also contains claims against the City of Los Angeles, the Los Angeles Police Department ("LAPD"), and Chief William Bratton (collectively the "City Defendants"). The City Defendants filed an Answer to the Complaint but have expressed an intention to file a Motion for Judgment on the Pleadings should the County Defendants prevail on their Motion to Dismiss.

may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) ("A motion may not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."); *Daniel v. County of Santa Barbara*, 288 F.3d 375, 380 (9th Cir.2002) (quoting *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir.2000)). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Daniel*, 288 F.3d at 380 (quoting *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir.2000)). The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). *See, e.g., Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248–49 (9th Cir.1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal citations omitted). "Dismissal with prejudice is proper under Rule 12(b)(6) only if it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Bautista v. Los Angeles County*, 216 F.3d 837, 842 (9th Cir.2000) (quoting *Conley*, 355 U.S. at 45, 78 S.Ct. at 102, 2 L.Ed.2d 80).

In *Baker*, the plaintiff, Linnie McCollan, was arrested on a facially valid arrest warrant arising out of charges against his brother Leonard. *Baker*, 443 U.S. at 141, 99 S.Ct. at 2693, 61 L.Ed.2d 433. The arrest warrant named Linnie rather than Leonard because when Leonard had originally been detained, he provided a duplicate of Linnie's drivers license to the offi-

cers and masqueraded as Linnie. *Id.* at 140–41, 443 U.S. 137, 99 S.Ct. at 2693, 61 L.Ed.2d 433. Despite repeatedly claiming they had arrested the wrong man, Linnie spent four days in the custody of the Dallas Police Department before the Potter County Sheriff's Department took custody of him. *Id.* Linnie spent another three days in jail before the officers recognized the error and released him. *Id.* In rejecting Linnie's § 1983 claim against the Potter County Sheriff, the Supreme Court determined that he had suffered no constitutional deprivation, irrespective of the defendants' intent. *Id.* at 140, 443 U.S. 137, 99 S.Ct. at 2692, 61 L.Ed.2d 433 ("The first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and the laws.' If there has been no such deprivation, the state of mind of the defendant is wholly immaterial. We think that [Linnie] has failed to satisfy this threshold requirement of § 1983 ....").

As the Supreme Court explained, one who is arrested on a facially valid warrant despite protestations of innocence has suffered no constitutional injury:

Absent an attack on the validity of the warrant under which he was arrested, respondent's complaint is simply that despite his protests of mistaken identity, he was detained in the Potter County jail from December 30, when Potter County deputies retrieved him from Dallas, until January 2, when the validity of his protests was ascertained. Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution. Respondent was indeed deprived of his liberty for a period of days, but it was pursuant to a warrant conforming, for purposes of our decision, to the requirements of the Fourth Amendment. Obviously, one in respondent's position could not be detained

indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment.... We may even assume, arguendo, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty ... without due process of law." But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation.

*Id.* at 143–145, 443 U.S. 137, 99 S.Ct. at 2694–95, 61 L.Ed.2d 433; *see also id.* at 145, 443 U.S. 137, 99 S.Ct. at 2695, 61 L.Ed.2d 433 ("Respondent's innocence of the charge contained in the warrant, while relevant to a tort claim of false imprisonment in most if not all jurisdictions, is largely irrelevant to his claim of deprivation of liberty without due process of law."); *id.* at 145–46, 443 U.S. 137, 99 S.Ct. at 2695, 61 L.Ed.2d 433 ("Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.").

 The Ninth Circuit applied *Baker* in rejecting a plaintiff's Fourth and Fourteenth Amendment claims after the plain-

tiff had been erroneously jailed on a facially valid warrant for nine days, transferred to another jurisdiction, held for another three days, and then released. *Erdman,* 926 F.2d at 878. In *Erdman,* the plaintiff was arrested on a felony warrant issued after he had already been permitted to plead guilty to misdemeanor charges arising out of the same incident and was then released. *Id.* The Ninth Circuit found that despite having been incarcerated for twelve days, "[i]t is clear that *Baker* defeats Erdman's claim. The second arrest alone was not a constitutional violation because it was pursuant to a facially valid bench warrant." *Id.* at 882. Put simply, *Baker* and *Erdman* stand for the relatively straightforward proposition that when an individual is arrested pursuant to a facially valid warrant, law enforcement officials have a limited number of days within which to assess and act upon an arrestee's claims of mistaken identity without violating the arrestee's constitutional rights.

Here, Plaintiff was arrested pursuant to a facially valid warrant. His name matched one of the aliases used by the individual named on the warrant. Although the four nights he spent in jail are certainly unfortunate, according to *Baker* and *Erdman,* they do not constitute a violation of Plaintiff's Fourth and Fourteenth Amendment rights. Indeed, Plaintiff's incarceration, which included two weekend nights, was for a shorter period of time than the unsuccessful plaintiffs in *Baker* and *Erdman.*

Plaintiff's reliance on *Fairley v. Luman,* 281 F.3d 913 (9th Cir.2002) is misplaced. In *Fairley,* John Fairley was taken into custody for violating a temporary restraining order. *Id.* at 915. The officers then checked for warrants and found two outstanding warrants for John's identical twin brother Joe. *Id.* Although the officers knew that John had a twin brother, and John insisted that the warrants were for

Joe, John was booked into jail. *Id.* Despite the fact that the charge against John was dropped after three days, John was held for twelve days.[2] *Id.* Apparently neither a fingerprint check nor a Department of Motor Vehicles check was performed at any time during John's incarceration. *Id.* John prevailed at trial on his § 1983 claim against the city. *Id.* In affirming the jury's verdict, the Ninth Circuit concluded that "John had a liberty interest in being free from a twelve-day incarceration without any procedural safeguard in place to verify the warrant he was detained on was his and in the face of his repeated protests of innocence." *Id.* at 918. Importantly, the plaintiff in *Fairley* was held three times as long as Plaintiff on a warrant that did not name him. *Fairley* simply is not controlling.

 It is quite clear that through this litigation, Plaintiff seeks to establish a policy requiring the LAPD and Los Angeles County Sheriff's Department to immediately conduct a livescan or other confirmatory check on every arrestee as soon as the arrestee claims to have been wrongly arrested. Throughout the Complaint, and again at oral argument, Plaintiff argues that such a requirement would be "reasonable" and that the failure of the officers to perform such a confirmatory check fell below the standard of care the officers owed to Plaintiff. By so arguing, Plaintiff seeks to import a negligence standard into his due process and Fourth and Fourteenth Amendment claims. Mere negligence, however, is insufficient to support such claims under § 1983. *Daniels v. Williams,* 474 U.S. 327, 334, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986) ("[W]e need not rule out the possibility that there are other constitutional provisions that would be violated by mere lack of care in order to hold,

as we do, that such conduct does not implicate the Due Process Clause of the Fourteenth Amendment."); *Wood v. Ostrander,* 879 F.2d 583, 587 (9th Cir.1989) ("[T]he Supreme Court [has] held that mere negligence or lack of due care by state officials does not trigger the protections of the fourteenth amendment and therefore does not state a claim under section 1983."); *Maddox v. City of Los Angeles,* 792 F.2d 1408, 1413 (9th Cir.1986) ("[N]egligent conduct by the state official is not enough to state a claim under section 1983 based on an alleged violation of the fourteenth amendment due process clause.").

At least with respect to those like Plaintiff who are arrested pursuant to a facially valid warrant and held for a matter of days, the Supreme Court and Ninth Circuit have both determined that the Constitution does not require the type of confirmatory policy Plaintiff seeks to establish. Nor must a state official in such circumstances exercise any particular level of care. Indeed, in such circumstances, as *Baker* makes clear, the officer's state of mind is irrelevant. *Baker,* 443 U.S. at 140, 99 S.Ct. at 2692, 61 L.Ed.2d 433 ("The first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and the laws.' If there has been no such deprivation, the state of mind of the defendant is wholly immaterial. We think that [Linnie] has failed to satisfy this threshold requirement of § 1983 ...."). The Court therefore concludes that Plaintiff's first and second claims have failed to state a § 1983 claim for a violation of his rights under the Fourth and Fourteenth Amendments. Because the additional facts which Plaintiff states that he could allege do not cure the deficiencies of the Complaint, the Court

---

**2.** At some point after the charge against John was dropped, he was transferred to the Los Angeles County Jail where he was held for four of his twelve days of incarceration. *Id.* at 915, 918 n. 5.

dismisses the first and second claims with prejudice.

Although the City Defendants have not moved to dismiss those same claims, at oral argument, Plaintiff's counsel conceded that the Court's analysis with respect to the County Defendants would also apply to the City Defendants. Accordingly, the Court preliminarily concludes that Plaintiff cannot state viable federal constitutional claims against the City Defendants for the same reasons that his claims against the County Defendants fail.

 The Court possesses only supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). Once supplemental jurisdiction has been established under § 1367(a), a district court "can decline to assert supplemental jurisdiction over a pendant claim only if one of the four categories specifically enumerated in section 1367(c) applies." *Executive Software v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1555–56 (9th Cir.1994). Thus, the Court may decline supplemental jurisdiction under § 1367(c) if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims because the Court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The Court therefore dismisses Plaintiff's third, fourth, fifth, and sixth claims without prejudice. *See* 28 U.S.C. § 1367(d). Plaintiff's first and second claims are dismissed with prejudice. The scheduling conference, currently calendared for May 21, 2007, is vacated.

The Court stays this Order until May 13, 2007. Prior to that date, Plaintiff may file an objection explaining why the Court's ruling with respect to the County Defendants does not also apply to the City Defendants.

IT IS SO ORDERED.