**Mary ROBINS, Plaintiff,**

v.

**SCHOLASTIC BOOK FAIRS, a New York Corporation, Defendant.**

**Civil No. 95–686–JO.**

United States District Court, D. Oregon.

May 2, 1996.

As Amended May 13, 1996.

Craig A. Crispin, Crispin & Associates, Portland, OR, for Plaintiff.

Gordon L. Osaka, Williams Zografos Peck & Atwood, Portland, OR, for Defendant.

## OPINION AND ORDER

ROBERT E. JONES, District Judge:

This case involved employment discrimination claims brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. § 1981(A), as well as Oregon statutory discrimination and retaliation laws, ORS 659.400–.425, and Oregon common law for wrongful discharge. In violation of these laws, Defendant allegedly failed to accommodate Plaintiff's blood disorder and then terminated her employment because of the disorder.

On January 9, 1996, pursuant to Rule 68, Defendant extended a $25,000 offer of settlement. After settlement negotiations before Judge Ashmanskas, the offer was modified to $40,000 and then accepted *nunc pro tunc* by Plaintiff on January 18, 1996. Thereafter, the Court entered an Amended Judgment in the amount of $40,000 plus Plaintiff's "reasonable costs of action and attorney's fees incurred in this lawsuit through January 9, 1996." Amended Judgment, dated April 12, 1996. Plaintiff requests $79,243.75 in attorney fees, $357.00 in expert witness fees, and $4,506.48 in costs. Defendant objects to each amount.

## A. Attorney Fees

Defendant advances seventeen objections to Plaintiff's petition for attorney fees. However, I address only the following specific grounds.

### 1. Untimeliness

First, Defendant urges the Court to reject the petition because it is untimely. Plaintiff filed her Petition on February 2, 1996, but Judgment was entered by the Court on March 11, 1996 and then an Amended Judgment was entered on April 12, 1996; therefore, the Petition is timely.

### 2. Recovery of Post–Offer Fees

Second, Defendant argues that the Petition should not include fees that accrued after January 9, 1996. Defendant's Rule 68 offer reads in relevant part,

> Pursuant to FRCP Rule 68, Defendant Scholastic Book Fairs hereby offers to allow judgment to be taken against itself in the amount of twenty-five thousand dollars ($25,000.00), plus an additional amount for accrued costs and attorney's fees, which additional amount shall be determined with FRCP Rule 54 and Local Rule 265.

Rule 68 Offer, dated January 9, 1996. During settlement negotiations before Judge

Ashmanskas, the offer was modified to $40,-000 and then accepted *nunc pro tunc* by Plaintiff on January 18, 1996. Defendant contends that Plaintiff's *nunc pro tunc* acceptance eliminated post-offer fees incurred after January 9, 1996, when Plaintiff received the offer.

In *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), the Supreme Court held that Rule 68 applied to bar recovery of attorney fees incurred after a Rule 68 offer was made when the plaintiff ultimately recovered less by judgment than the settlement offer. *Id.* at 9, 105 S.Ct. at 3016–17. However, *Marek* does not apply to the present action because Plaintiff accepted the Rule 68 offer made by Defendant. Therefore, I must look at the language of the offer and the intent of the parties to determine whether the Rule 68 offer barred recovery of post-offer attorney fees.

In ascertaining whether the offer limits post-offer fees, "courts should apply the usual rules of contract interpretation to offers of judgment * * *." *Holland v. Roeser*, 37 F.3d 501, 504 (9th Cir.1994) (Rule 68 offer in § 1983 case) (citing *Herrington v. County of Sonoma*, 12 F.3d 901, 907 (9th Cir.1993)); *see also Guerrero v. Cummings*, 70 F.3d 1111, 1113 (9th Cir.1995). These rules dictate that "ambiguities will be construed against the offeror as the drafting party and, where such ambiguities are found to exist, extrinsic evidence of the parties' actual intentions will be examined to clarify those ambiguities and arrive at the meaning of the offer's material terms." *Herrington*, 12 F.3d at 907 (9th Cir.1993) (citing *Erdman v. Cochise County Arizona*, 926 F.2d 877, 881 (9th Cir.1991)). "If the defendant can provide clear evidence that demonstrates that an ambiguous clause was intended by *both* parties to provide for the waiver of fees, then the defendant is absolved of liability." *Muckleshoot Tribe v. Puget Sound Power &*

*Light*, 875 F.2d 695, 698 (9th Cir.1989).[1] Nonetheless, " 'any waiver or limitation of attorney fees in settlements of [civil rights] cases must be clear and unambiguous.' " *Holland* at 504–505 (quoting *Erdman*, 926 F.2d at 880 (9th Cir.1991) (Rule 68 offer in § 1983 case) (citation omitted)).[2]

In *Holland*, the defendant's Rule 68 offer stated, "[C]osts now accrued and reasonable attorney fees as determined by the court." 37 F.3d at 504. The Ninth Circuit concluded that the language "costs now accrued" clearly waived post-offer costs, but that the language "reasonable attorney fees as determined by the court" was ambiguous and broader than the cost provision, and thus did not limit post-offer fees. *Id.* Therefore, the Ninth Circuit affirmed the district court's decision to award "fees incurred in preparing the post-offer fee petition." *Id.* By contrast, the terms of the offer in *Guerrero* unambiguously limited fees and costs to those "incurred by this plaintiff prior to the date of this offer in an amount to be set by the court." Therefore, the Ninth Circuit held that plaintiff could only recover pre-offer fees and costs. 70 F.3d at 1113.

Unlike the offer in *Guerrero*, in the present action, Defendant's offer suffers from the same deficiency as the offer in *Holland*, with respect to attorney fees, because it contains no limiting language, but rather merely states, "[P]lus an additional amount for accrued costs and attorney's fees, which additional amount shall be determined with FRCP Rule 54 and Local Rule 265." Therefore, like the *Holland* offer, the ambiguous phrase, "accrued costs and attorney's fees," from Defendant's offer does not clearly waive post-offer fees.

Because the term of the offer regarding attorney fees is ambiguous, the Court may consider extrinsic evidence to determine the meaning of that term. In order to clarify

---

1. Although *Muckleshoot* involved a negotiated consent decree, the Ninth Circuit has extended its reasoning to Rule 68 offers: "We see no reason why the logic of *Muckleshoot* should not apply to all civil rights settlements, whether settled by negotiated consent decrees or Rule 68 offers." *Erdman*, 926 F.2d at 880.

2. "As a general rule, 'time spent in establishing entitlement to an amount of fee awardable under section 1988 is compensable.' " *Guerrero* at 1113 (quoting *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir.1986)). "However, a settlement offer may be conditioned upon the waiver of such fees." *Guerrero* at 1113 (citation omitted).

the meaning of the attorney fees term, Defendant provides an excerpt from the settlement conference before Judge Ashmanskas which suggests that both parties intended to limit recovery of attorney fees and costs as of January 10, 1996:

> Osaka: [W]ith respect to the costs and attorney fees as of January 10, 1996, I understand that that's, that [sic] to be what the costs and attorney fees were accrued or incurred as of that time. O.K.
>
> \* \* \* \* \* \*
>
> Judge: The intent is to cut off the request for attorney fees as of January 10th, except for the fees that may be incurred in preparing for the request for attorney fees, preparing the fee petition, the cost bill, and all that entails as far as rebuttal \* \* \*, reply, response and so forth.
>
> \* \* \* \* \* \*
>
> Osaka: [A]s the court has characterized it and I, if Mr. Crispin since or after January 10th has sent out subpoenas \* \* \* at, let's say $50 a pop, that he can't claim that. That's what \* \* \* I was kind of getting at, in terms of accrued costs and attorney fees as of the Offer of Judgment date.
>
> Judge: Mr. Crispin?
>
> Crispin: That, that's my understanding \* \* \*.

Def.'s Objections to Pl.'s Att'y Fees, Ex. 2 at 2–3. Furthermore, Judge Ashmanskas explained in a Memorandum to this Court, dated April 23, 1996 (attached as Exhibit A), that Plaintiff agreed to accept the offer *nunc*

pro tunc on January 1, 1996, as if she had accepted the offer on January 10, 1996, and relinquished attorney fees after January 10, 1996, except for fees incurred in preparing and litigating her fee petition and cost bill. Therefore, based upon the discussion at the settlement hearing and Judge Ashmanskas's notes and recollection, I find that the parties unequivocally agreed that Plaintiff's award of attorney fees and costs shall include reasonable fees and costs incurred from February 1994 through January 10, 1996,[3] the date of the acceptance, plus an additional amount for preparing the fee petition and cost bill.[4]

### 3. Reasonableness of Attorney Fees

■■■ "In determining a reasonable attorney's fee, the district court's first step is to calculate a 'lodestar' by multiplying the number of hours it finds the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *McGrath v. County of Nevada,* 67 F.3d 248, 252 (9th Cir.1995) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). In calculating the lodestar amount, the district court should take into account the factors set forth in *Kerr v. Screen Extras Guild,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), that it finds relevant.[5] *McGrath* at 252 (citing *D'Emanuele v. Montgomery Ward & Co.,* 904 F.2d 1379, 1383, 1386 (9th Cir.1990)). The second step in the fee calculation is to assess whether the lodestar figure should be adjusted up or down on the basis of *Kerr* factors not already subsumed in the initial calculation. *McGrath* at

---

**3.** Because the parties, as well as Judge Ashmanskas, were unsure in the settlement hearing whether the cut-off date for fees and costs should be January 10, 1996 or January 9, 1996, in an abundance of caution, I set January 10, 1996 as the cut-off for fees and costs.

**4.** According to Mr. Crispin's billing list, the unrecoverable fees incurred after January 10, 1996 include: 36.45 hours for Mr. Crispin, 0.7 hours for Ms. Jacobs, 45 hours for two paralegals, and 1.5 hours for the law clerk.

**5.** These factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to accep-

tance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

"Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992) (quoting *Hensley* at 436, 103 S.Ct. at 1941).

252; *see also D'Emanuele* at 1383.[6] The court may adjust the lodestar upward or downward only in "rare" and "exceptional" cases. *Cunningham v. County of Los Angeles,* 879 F.2d 481, 487 (9th Cir.1988), *cert. denied,* 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990).

Plaintiff states that five different people worked on the present case at various billing rates: (1) Mr. Crispin at a rate of $185/hour, (2) Ms. Jacobs at a rate of $150/hour, (3) Ms. Meadows at a rate of $50/hour, (4) Ms. Coffin at a rate of $65/hour, and (5) Ms. Riggs at a rate of $65/hour. Crispin Aff. at 3–7. Furthermore, according to the Crispin Affidavit in support of Plaintiff's fee petition, these five individuals expended the following hours: (1) Mr. Crispin is lead counsel on this case and expended 291.55 hours which totals $53,936.75, (2) Ms. Jacobs is Mr. Crispin's associate and she expended 4.1 hours which totals $615.00, (3) Ms. Meadows is Mr. Crispin's law clerk and she expended 140.70 hours which totals $7,035.00, and (4) Ms. Coffin and Ms. Riggs are both Mr. Crispin's legal assistants and they expended 255.25 hours which totals $16,591.25. *Id.* at 5–7. Plaintiff claims that the grand total for all these legal fees is $79,243.75.[7] Crispin Aff. Ex. A.[8]

### a. Hours Reasonably Expended

■ The total hours expended as of January 10, 1996, including additional hours for preparation and litigation of the fee petition, are 255.10 hours for Mr. Crispin, 3.4 hours for Ms. Jacobs, 210.25 hours for the paralegals, and 139.20 hours for the law clerk.[9] Plaintiff requests attorney fees for these hours as well as additional unclaimed hours

6. "The subsumed factors are: the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, the results obtained and the superior performance of counsel." *D'Emanuele* at 1383 (citations omitted).

7. Interestingly, the sum of each individual's figures only equals $78,178.00. Though, Plaintiff attempted to explain the reason for this discrepancy, the Court is still unclear as to the source of the $1,065.75 miscalculation. Nevertheless, the fee award will be calculated based upon the individual figures in Exhibit A of the Crispin Affidavit.

expended in preparing and litigating the attorney fee petition.

However, I find that the claimed hours were not reasonably expended for two reasons. First, contrary to Plaintiff's assertions, this case did not involve unusually complex issues; rather, it turned on a factual dispute regarding whether Defendant failed to accommodate Plaintiff's blood disorder, and whether Defendant fired Plaintiff because of her alleged disability. This case ranks among the most straight-forward employment law cases that compose approximately 25% of this Court's civil docket. Because Plaintiff's case was relatively uncomplicated, the total number of hours expended by Plaintiff's counsel were excessive. For example, Plaintiff incurred nearly $28,500 in preparing her Motion for Summary Judgment and responding to Defendant's Motion for Summary Judgment on a case that Plaintiff describes as factually complicated. As Plaintiff should be well aware, motions for summary judgment are routinely denied in federal court where there are genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Even if Plaintiff incurred reasonable fees in response to Defendant's Motion for Summary Judgment, the factual nature of this case should have strongly discouraged Plaintiff from moving for summary judgment. Not surprisingly, by Minute Order, dated January 9, 1996, this Court summarily denied both Plaintiff's and Defendant's Motions for Summary Judgment.

8. As discussed above, Plaintiff's acceptance of the offer barred recovery of fees incurred after January 10, 1996 that were not related to preparing and litigating Plaintiff's Attorney Fee Petition. These unrecoverable hours total: 36.45 hours for Mr. Crispin, 0.7 hours for Ms. Jacobs, 45 hours for two paralegals, and 1.5 hours for the law clerk. Therefore, the total hours expended as listed in Plaintiff's Fee Petition shall be reduced accordingly.

9. Note that these totals do not include the undetermined amount that Plaintiff seeks to recover by way of a Supplemental Petition for Attorney Fees, which are the unclaimed hours expended in preparing and litigating Plaintiff's Petition for Attorney Fees.

Second, Plaintiff recovered only about 3.6% of her damages alleged in the Complaint. This low degree of success did not require the investment of hours that Plaintiff claims were reasonably expended on this lawsuit.

Based on the two *Kerr* factors discussed above, I conclude that the hours worked by Plaintiff's counsel that were "reasonably expended," *see Hensley,* 461 U.S. at 424, 433–34, 103 S.Ct. at 1933, 1939–40 ("the district court also should exclude from this initial fee calculation hours that were not reasonably expended" (internal quotation omitted)), are 75% of the total hours currently claimed.

### b. Reasonable Rate

In setting a reasonable billing rate, the court must consider the "prevailing market rates in the relevant community" and determine what a lawyer of comparable skill, experience, and reputation could command in the relevant community. *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984). Furthermore, whether the attorney charges a fixed or contingent fee cannot be a factor in determining a reasonable rate. *Davis v. City and County of San Francisco,* 976 F.2d 1536, 1549 (9th Cir.1992), *vacated in part on other grounds,* 984 F.2d 345 (9th Cir.1993).

Recently, this Court noted that $200–$250 rates charged by civil rights attorneys in Portland, Oregon were excessive based on the average 1994 rate of $137/hour for Portland plaintiffs' civil litigation attorneys. *Nemo v. City of Portland, et al.,* CV–94–1553–ST, slip op. (D.Or. April 9, 1996) (statistics were derived from the 1995 Oregon State Bar Economic Survey). This Court concluded that the disproportionally high rates for civil rights attorneys "can only be attributed to the contingency nature of such litigation." *Id.* at 7. However, as stated above, an attorney's contingent fee is not an appropriate factor to consider in determining a reason-able rate. Therefore, after considering the attorney's request for $225/hour, as well as his significant experience in the field, the Court set the attorney's rate at $175/hour which was at the "upper end" of a reasonable range. *Id.* at 12.

The Portland attorney in *Nemo* has considerable more litigation experience than Plaintiff's counsel, Mr. Crispin, and was awarded by the Court a lower fee than Mr. Crispin requests. Moreover, Plaintiff failed to provide rates of Portland lawyers of comparable skill, experience, and reputation with Mr. Crispin. Instead, she included an affidavit from Stephen Brischetto who charges $200/hour for representing plaintiffs in employment law cases, but who has litigated many significant employment law cases to judgment. In contrast, Mr. Crispin's affidavit is devoid of any employment law case that he has litigated to judgment. Therefore, Plaintiff failed to include evidence of reasonable rates in the community of *similarly experienced* employment law attorneys.

Mr. Osaka notes that he is more experienced than Mr. Crispin and charges only $145/hour. I find that this is a "reasonable rate" based on the average rates for civil litigation attorneys in Portland, especially considering Mr. Crispin's moderate litigation experience in the field. Accordingly, Mr. Crispin's rate is $145/hour and Ms. Jacob's is $115/hour. The rates of the other individuals who worked on Plaintiff's case are reasonable.

### c. Lodestar Fee

Multiplying the hours that were reasonably expended by the reasonable rates,[10] I conclude that the lodestar fee is $43,505.07. This sum includes *all* hours reasonably expended which includes *all* current and future fees incurred in preparing and litigating Plaintiff's Petition for Attorney Fees and Costs. There will be no supplemental award

10.

| | | | | |
|---|---|---|---|---|
| 255.10 attorney hours | (× .75) at $145/hour | = | $27,742.13 |
| 3.4 attorney hours | (× .75) at $115/hour | = | $ 293.25 |
| 139.20 law clerk hours | (× .75) at $50/hour | = | $ 5,220.00 |
| 210.25 paralegal hours | (× .75) at $65/hour | = | $10,249.69 |
| TOTAL FEES | | = | $43,505.07 |

of attorney fees in this case. Therefore, the total lodestar fee is $43,505.07.

Plaintiff requests that the lodestar amount be adjusted upward. However, the lodestar fee is presumed reasonable and will be upwardly adjusted only "in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (quoting *Blum v. Stenson*, 465 U.S. 886, 898–901, 104 S.Ct. 1541, 1548–50, 79 L.Ed.2d 891 (1984), *rev'd after rehearing on other grounds*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987)); *see also Cunningham*, 879 F.2d at 487. This is not such a case; the lodestar fee is reasonable.

#### 4. Expert Witness Fees

■ Plaintiff correctly argues that expert witness fees may be included as part of the attorney fees award. *See* 42 U.S.C. § 1988(c) ("In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fees.") Plaintiff is entitled to recover $282.00 for the office consultation with Dr. Wallace, but the $75.00 cancellation fee is not recoverable because it was incurred after January 10, 1996. Therefore, $282.00 will be added to the lodestar award, which equals a final fee award totaling $43,787.07.

#### B. Costs

On January 30, 1996, Plaintiff filed a Bill of Costs requesting $5,009.35. According to the Cost Bill, the expenses include (1) $120.00 for filing the lawsuit, (2) $25.00 for service, (3) $2,303.95 for depositions, (4) $1,940.35 for exemplifications and photocopies, (5) $357.00 in expert witness fees, and (6) $263.05 in miscellaneous costs which consist of long distance calls, messenger service, postage, and travel expenses.[11] Defendant disputes the latter four categories of costs. Because the Court previously addressed the recovery of expert witness fees, I examine the remaining three categories of disputed costs.

Due to discrepancies between Plaintiff's Cost Bill and her Memoranda in Support of the Cost Bill, *supra* note 10, the Court will consider the following amounts as the disputed costs requested by Plaintiff: $2,238.95 in deposition costs, $1,578.93 in photocopies, and $263.05 in miscellaneous costs.

Both parties agree that costs are recoverable, but they disagree as to the types and amounts of the costs that Plaintiff may receive. Under the Civil Rights Act, section 1988 expressly allows the court to award a prevailing party "[i]n any action or proceeding to enforce the provisions of 1981, 1981a * * * a reasonable attorney's fee as part of costs." 42 U.S.C. § 1988. Similarly, under the ADA, section 12205 permits the court to award the prevailing party "a reasonable attorney's fee, including litigation expenses, and costs * * *." 42 U.S.C. § 12205.

Neither § 1988 nor § 12205 defines "costs," therefore, the Court must presume that those cost-shifting provisions permit recovery of only the types of costs allowed in 28 U.S.C. §§ 1920 and 1821.[12] *Crawford Fit-*

---

11. Like Plaintiff's Fee Petition, her Cost Bill contains numerous discrepancies. For instance, in her Reply Memorandum, Plaintiff explained that her deposition costs totaled $2,610.20, but that $371.25 of that total was a billing error for which Plaintiff will receive a refund, resulting in a total of $2,238.95 in deposition costs; but, in her Cost Bill, Plaintiff requests $2,303.95 in deposition costs. There is a similar discrepancy regarding her photocopying costs: in her Reply Memorandum and the Crispin Affidavit, Plaintiff requests $1,578.93 in photocopying costs, but seeks $1,940.35 for those costs in her Cost Bill.

In fact, using the itemized list of costs in Exhibit B of the Crispin Affidavit, the Court is unable to calculate Plaintiff's figures on her total photocopying and deposition costs. Therefore, its unclear exactly what expenses are included in Plaintiff's totals for photocopying and deposition costs. Mr. Crispin fails to explain these inconsistencies, and the Court is extremely frustrated by Mr. Crispin's inaccuracies in calculating the fees and the costs.

12. Section 1920 reads:
A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

ting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 444–45, 107 S.Ct. 2494, 2498–99, 96 L.Ed.2d 385 (1987); see also West Virginia University Hospitals, Inc. v. Casey, 499 U.S. 83, 87 n. 3, 111 S.Ct. 1138, 1141 n. 3, 113 L.Ed.2d 68 (Rule 54(d) "is to be read in harmony with the word 'costs' in 28 U.S.C. § 1920 * * * and we think the same is true for the word 'costs' in § 1988." (citing Crawford Fitting at 445, 107 S.Ct. at 2499)); see also Agredano v. Mutual of Omaha Companies, 75 F.3d 541, 544 (9th Cir.1996) (held that cost-shifting provision in ERISA empowered the court "to award only the types of 'costs' allowed by 28 U.S.C. § 1920 itself, by 28 U.S.C. § 1821 or by similar such provisions.") Consequently, the recoverable costs under § 1988 and § 12205 include only those costs listed in 28 U.S.C. §§ 1920 and 1821.

### 1. Costs Incurred After January 10, 1996

As an initial matter, for the reasons discussed above, Plaintiff may not recover any costs incurred after January 10, 1996. These unrecoverable costs include $226.85 in photocopies and exemplifications, $8.75 in messenger fees, and $5.85 in postage.[13]

### 2. Photocopies

■ In order for Plaintiff to recover the remaining $1337.48 in photocopying costs, they must have been reasonable and necessary for effective and competent representation. Thornberry v. Delta Air Lines, 676 F.2d 1240, 1244 (9th Cir.1982) (quoting Northcross v. Board of Education, 611 F.2d

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

In addition, section 1821(b) provides in part: "A witness shall be paid an attendance fee of $40 per day for each day's attendance."

**13.** According to Plaintiff's itemized list of costs, attached to the Crispin Affidavit as Exhibit B, Plaintiff also incurred $155.00 in facsimile fees and $82.32 in "exhibit supplies." These expenses do not fall within the categories of costs that Plaintiff seeks to recover, thus it appears

624 (6th Cir.1979)), remanded on other grounds, 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311 (1983). However, Plaintiff makes no effort to provide even a brief explanation for each photocopy expense. Therefore, it is impossible for the Court to determine whether any of the photocopy charges were unnecessary. Defendant objects to all but $225 of the photocopy expenses which Defendant estimates as the number of copies necessarily used in this case. Because I cannot ascertain from Plaintiff's list of costs the purpose for any of the photocopy charges, I will grant only 70% of the remaining total photocopy expenses, which yields $936.24 in recoverable photocopy costs.

### 3. Depositions

■ Costs of depositions are recoverable only if necessarily obtained for use in the case. Alflex Corp. v. Underwriters Laboratories, Inc., 914 F.2d 175, 177–78 (9th Cir. 1990), cert. denied, 502 U.S. 812, 112 S.Ct. 61, 116 L.Ed.2d 36 (1991). "Disallowance for expenses of depositions not used at trial is within the district court's discretion." Washington State Dept. of Transp. v. Washington Natural Gas Co., 59 F.3d 793, 806 (9th Cir. 1995). Conversely, allowance of costs for depositions not used at trial is not an abuse of discretion so long as the court determines that the depositions were "necessarily obtained." Smith v. Hughes Aircraft Co., 22 F.3d 1432, 1439 (9th Cir.1993) (internal quotation omitted).

that Plaintiff is not seeking to recoup these expenses. For this reason, I will not subtract these amounts from the claimed costs. However, Plaintiff's Petition for Attorney Fees and Costs is hardly a model of clarity. Therefore, if the Court is in error, Defendant may move to amend the Court's order regarding these costs.

Plaintiff contends that she did not necessarily incur $226.85 in photocopy costs after January 10, 1996, because the copies may have been made before January 10, 1996, but then the charges may have been assessed after January 10, 1996. However, Plaintiff will bear the burden of this uncertainty. Consequently, Plaintiff may not recover $226.85 for photocopy costs which were incurred or assessed after January 10, 1996.

■ In this case, Plaintiff seeks $2,238.95 for deposition costs, and claims that these costs were necessarily obtained because they were depositions of the primary decision-makers at Scholastic Book Fairs who provided evidence of intentional discrimination. However, Defendant contends that more than $1,000 of these costs were not necessary because Plaintiff deposed the witnesses two times. In response, Plaintiff explains that the second set of depositions of these individuals was necessary because they had to be questioned about additional documents that Defendant produced after the first set of depositions. These additional documents purportedly contained unidentified handwriting that evidenced intentional discrimination, the essence of Plaintiff's claims. I find that the depositions were necessarily obtained, thus Plaintiff may recover $2,238.95 for deposition costs.

### 4. Miscellaneous Expenses

■ Lastly, Plaintiff requests $263.05 in miscellaneous expenses which include the following: (1) $22.57 for long distance, (2) $153.88 for messenger service, (3) $74.60 for postage, and (4) $12.00 for travel. Defendant objects to all of these costs on the basis that they are not recoverable under 28 U.S.C. § 1920.

■ Defendant correctly asserts that these miscellaneous expenses are not "costs" under 28 U.S.C. § 1920; however, they are recoverable as litigation expenses under 42 U.S.C. § 1988. "Out-of-pocket litigation expenses are reimbursable as part of the attorneys' fee, distinct from the costs already awarded to plaintiffs under 28 U.S.C. § 1920." *United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Under § 1988, recoverable out-of-pocket expenses include those costs "that

would normally be charged to a fee paying client. Thus reasonable expenses, though greater than taxable costs, may be proper." *Harris v. Marhoefer*, 24 F.3d 16, 19–20 (9th Cir.1994) (internal quotations and citations omitted).[14]

Likewise, Plaintiff may also recover these miscellaneous costs under 42 U.S.C. § 12205 which expressly allows an award of "attorney's fees, *including litigation expenses*, and costs" to the prevailing party. 42 U.S.C. § 12205 (emphasis added). The phrase "litigation expenses" in § 12205 has not been interpreted by any federal appellate court in the country but the Committee on the Judiciary discusses the legislative intent of the phrase:

Section [12205] provides that courts or agencies may award attorney's fees including litigation expenses, and costs to a prevailing party for actions brought under the ADA. The Committee intends that the attorney's fee provision be interpreted in a manner consistent with the Civil Rights Attorney's Fees Act, [footnote omitted citing 42 U.S.C. § 1988] including that statute's definition of prevailing party, as construed by the Supreme Court. [footnote omitted]

Litigation expenses include the costs of expert witnesses. This provision explicitly incorporates the phrase "including litigation expenses" to respond to rulings form [sic] the Supreme Court that items such as expert witness fees, travel expenses, etc., be explicitly included if intended to be covered under an attorney's fee provision. [footnote omitted]. [F]urther, such expenses are included under the rubric of 'attorney's fees' and not 'costs' so that such expenses will be assessed against a plaintiff only under the standard set forth in *Christiansburg Garment.*[15]

14. " 'Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to the statutory authority of § 1988.' " *Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir.1982) (quoting *Northcross v. Board of Ed. of Memphis City Schools*, 611 F.2d 624, 639 (6th Cir.1979)); *see also, Burt v. Hennessey*, 929 F.2d 457 (9th Cir.1991) (pursuant to § 1988, court held that plaintiff was entitled to recover costs for reasonable paralegal and

secretarial assistance, photocopying charges, statutory nonexpert witness fee, and photo blow-up expenses).

15. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 700–01, 54 L.Ed.2d 648 (1978) (a plaintiff shall not be assessed an opponent's attorney's fees unless a court finds that the plaintiff's claim is "frivolous, unreasonable or groundless.")

H.R.Rep. No. 101–485(III), 101st Cong., 2d. Sess. 73 (1990), *Reprinted in,* 1990 U.S.C.C.A.N. 267, 445, 496. Based upon the legislative intent, this Court interprets "litigation expenses" from § 12205 as including the same out-of-pocket expenses that are recoverable under 42 U.S.C. § 1988.

Accordingly, pursuant to both § 1988 and § 12205, Plaintiff is entitled to all necessary litigation expenses, so long as they are not overhead expenses absorbed by counsel. *See Thornberry v. Delta Air Lines,* 676 F.2d 1240, 1244 (9th Cir.1982). Consequently, Plaintiff may recover her $263.05 in miscellaneous costs as litigation expenses.[16]

## CONCLUSION

Plaintiff's Motions for Costs (# 78) and Attorney Fees (# 79) are GRANTED IN PART and DENIED IN PART, as follows: Plaintiff shall receive attorney fees in the sum of $45,787.01, plus costs in the sum of $3,583.24. There will be no additional fees or costs awarded in this action. IT IS SO ORDERED.

**16.** The total recoverable costs consist of a $120.00 filing fee, $25.00 service fee, $2,238.95 deposition costs, $936.24 photocopy charges, and $263.05 litigation expenses. These costs total $3583.24.

1038

# MEMORANDUM

DATE:      April 23, 1996

TO:        Judge Jones

FROM:      Magistrate Judge Ashmanskas *DCA*

SUBJECT:   Mary Robins  v.  Scholastic Book Fairs,
           Case No. CV-95-686-JO

RECEIVED

APR 2 4 1996

ROBERT E JONES
UNITED STATES DISTRICT JUDGE

I understand a question has arisen regarding the attorney fee issue in this case. Attached are copies of two pages of my settlement conference notes (with highlighting added) and my January 18, 199[6], memorandum to you setting forth the settlement agreement.  They are consistent with my recollection that plaintiff could petition for attorney fees accrued through January 10, 1996, except for fees dealing with the fee petition.  We were not quite certain of the fax date and, therefore, January 9, 1996, could be the cut-off date.

Attachments

EXHIBIT A, Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

# MEMORANDUM

DATE:     January 18, 1995

TO:       Judge Jones

FROM:     Magistrate Judge Ashmanskas

SUBJECT:  Mary Robins v. Scholastic Book Fairs,
          USDC Case No. CV-95-686-JO

I conducted a five-hour settlement conference this date with:

    (1)    Plaintiff, Mary Robins;

    (2)    Plaintiff's attorney, Craig Crispin;

    (3)    Defendant's branch manager, Bob Sherwin; and

    (4)    Defendant's attorneys, Gordon Osaka and Kathy Short.

The case has been settled as follows:

> Plaintiff has accepted an offer of judgment (effective January 10±, 1996) for $40,000 ($5,000 economic and $35,000 non-economic damages), payable within 10 days and with attorney fees to be set by you in accordance with FRCP 68.

I tried to "settle" the attorney fee issue, but to no avail. Sorry.

EXHIBIT A, Page 2

P's new job
No amt to return

11/93
EEOC = PT = Regs
Cases
Retaliation
PMM 9/27#/93
No real meetings to
settle etc

Punitive - equit
wt
mitigation

3 pegl Sve
Pat Gardner 7
+10lyr offer ) No
prob

Econ P ye 000
$ 15-20,000
$200 wk
4/94 > 5/95
5/95 >
$185

$35000
cr
as

11/0/96

95

EXHIBIT A, Page 4