242 F.3d 227 (4th Cir. 2001)
 L. DOUGLAS BRINN; KEN JESSUP; STEVEN W. JACKSON; JOYCE A. WILLIAMS, on behalf of themselves and all those similarly situated, Plaintiffs-Appellees,
v.
TIDEWATER TRANSPORTATION DISTRICT COMMISSION, t/a Tidewater Regional Transit, Defendant-Appellant.
 No. 00-2116.
 UNITED STATES COURT OF APPEALS, FOR THE FOURTH CIRCUIT.
 Argued: January 24, 2001.
Decided: March 1, 2001.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.
 Rebecca B. Smith, District Judge. (CA-99-1637-2)[Copyrighted Material Omitted]
 COUNSEL: ARGUED: Donald H. Clark, WILLIAMS, MULLEN, CLARK & DOBBINS, Virginia Beach, Virginia, for Appellant. Jonathan Gerald Martinis, COMMONWEALTH OF VIRGINIA DEPARTMENT FOR RIGHTS OF VIRGINIANS WITH DISABILITIES, Richmond, Virginia, for Appellees. ON BRIEF: A. W. VanderMeer, Jr., WILLIAMS, MULLEN, CLARK & DOBBINS, Virginia Beach, Virginia, for Appellant.
 Before MOTZ and TRAXLER, Circuit Judges, and Malcolm J. HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Traxler and Judge Howard joined.
 OPINION
 DIANA GRIBBON MOTZ, Circuit Judge:
 
 
 1
 After L. Douglas Brinn, Ken Jessup, Steven Jackson, and Joyce Williams, obtained an advantageous settlement of their claims against Tidewater Transportation District Commission under the Americans with Disabilities Act (ADA) and the Rehabilitation Act of 1973, they sought attorney's fees. The district court awarded them $29,506.24 in attorney's fees. Tidewater appeals, not disputing the reasonableness of the amount of the fee award, but contending that the award of any attorney's fees in this case violates state and federal law. For the reasons set forth below, we affirm.
 
 I.
 
 2
 The ADA makes mandatory the provision of special transportation services, known as paratransit services, to individuals with disabilities. See 42 U.S.C. S 12143(a)(1994). Section 12143 of the ADA expressly provides:
 
 
 3
 It shall be considered discrimination for purposes of section 12132 of this title and section 794 of [the Rehabilitation Act of 1973, 29 U.S.C. S 701 (1994)] for a public entity which operates a fixed route system . . . to fail to provide with respect to the operations of its fixed route system . . paratransit and other special transportation services to individuals with disabilities . . . that are sufficient to provide to such individuals a level of service . . . which is comparable to the level of designated public transportation services provided to individuals without disabilities using such system . . . .
 
 
 4
 Thus, federal law requires public entities operating fixed-route public transportation systems to provide paratransit services "comparable to the level of designated public transportation services provided to individuals without disabilities using such system." Id.
 
 
 5
 Under the regulations implementing S 12143, local transportation entities must comply with specified service criteria in order to provide sufficiently "comparable paratransit services." See 49 C.F.R. pt. 37, App. D, S 37.121, p. 499 (1999). One of the specified service criteria concerns the scheduling of paratransit trips. Although local entities may accept reservations up to fourteen days in advance, they also must "schedule and provide paratransit service to any ADA paratransit eligible person at any requested time on a particular day in response to a request for service made the previous day." 49 C.F.R. S 37.131(b). In other words, local transportation entities must provide paratransit services for eligible individuals on a next-day basis.
 
 
 6
 Tidewater governs the transportation district that operates the public transportation system in and around the cities of Chesapeake, Norfolk, Portsmouth, Suffolk, and Virginia Beach, Virginia. See Va. Code S 15.2-4504. Since 1978, Tidewater has provided paratransit services to the elderly and disabled within its service area. From 1996 through 1999, Tidewater experienced a significant increase in the demand for paratransit services. As a result, meeting advance reservation requests often exhausted the available services, forcing Tidewater to refuse requests for next-day paratransit service.
 
 
 7
 In April and May of 1999, L. Douglas Brinn, Ken Jessup, Steven Jackson, and Joyce Williams, among others, complained to the Department for Rights of Virginians with Disabilities (DRVD) that Tidewater had failed to provide them next-day paratransit services. DVRD, a state agency charged with rendering assistance to persons seeking to protect their rights under the ADA, the Rehabilitation Act, and the Virginians with Disabilities Act, see Va. Code S 51.5-37 (1998), is part of Virginia's state system for protecting the rights of the disabled. By choosing to create systems designed"to protect the legal and human rights of individuals with disabilities," states become eligible for federal funding under the Rehabilitation Act. See 29 U.S.C. S 794e(a)(1). To receive this federal funding, a state system must "have the authority to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of [disabled] individuals within the State." 29 U.S.C. S 794e(f)(3). In Virginia, this authority is vested in DRVD. See Va. Code S 51.5-37.
 
 
 8
 In June 1999, DRVD sent Tidewater formal notice that it represented a group of individuals aggrieved by Tidewater's failure to provide next-day paratransit services and that this denial constituted a violation of the ADA. On July 16, 1999, Tidewater's Executive Director, Michael Townsend, met with lawyers from DRVD and executed a written agreement under which Tidewater promised to bring its provision of paratransit transportation services into "full compliance with the ADA and the Rehabilitation Act" and"all regulations promulgated thereto" not later than 45 days after October 1, 1999. In the agreement, the parties also arranged to meet on July 22, 1999 to decide on "specific levels of compliance, including levels of service and a graduated time schedule (with the first target date to be 21 August 1999) for meeting those requirements, concluding with full compliance with the requirements no later than 15 November 1999."
 
 
 9
 On July 22, 1999, counsel for the parties met as agreed. At that meeting, DRVD submitted a ten-page proposed settlement agreement, which contained detailed standards of compliance, reporting requirements, and penalties for noncompliance. A few weeks later, on August 17, 1999, counsel met for a third time. At that meeting, counsel for Tidewater presented a counter-proposal, in which, Tidewater did not bind itself to bring its provision of next-day paratransit services into compliance with the ADA or the Rehabilitation Act, but rather only committed to "use its best efforts" not to "engage in any operational practice or activity that would establish a pattern of trip denials." DRVD refused to accept Tidewater's counter-proposal, and, after this meeting, settlement negotiations ceased.
 
 
 10
 Brinn, Jessup, Jackson, Williams, and others continued to experience difficulty obtaining next-day paratransit services. Believing that further settlement negotiations would be fruitless, they filed suit under the ADA and the Rehabilitation Act, on behalf of themselves and all similarly situated individuals, alleging that Tidewater failed to provide next-day paratransit services as required by federal law. The suit sought an injunction requiring Tidewater to bring its provision of next-day paratransit services into full compliance with the ADA and the Rehabilitation Act. During a pretrial conference on November 30, 1999, the plaintiffs, represented by DRVD, offered to engage in formal mediation, but Tidewater refused. The parties then proceeded with discovery.
 
 
 11
 After discovery was completed, the plaintiffs moved for summary judgment. However, on January 18, 1999, before argument on the summary judgment motion could be heard, the parties entered into a settlement agreement, under which Tidewater agreed both to provide the relief sought in the complaint and to produce monthly monitoring reports on its compliance with these terms. The district court incorporated the settlement agreement into a court order, and ultimately entered a permanent injunction based on the terms of the settlement agreement.
 
 
 12
 The plaintiffs then moved for an award of attorney's fees, as "prevailing" plaintiffs under the ADA, 42 U.S.C.S 12205, and the Rehabilitation Act, 29 U.S.C. S 794a(b). The district court awarded them $29,506.24 in attorney's fees and costs. Tidewater now appeals; it does not dispute the reasonableness of the award amount, but instead contends that state and federal law prohibit the award of any fees in this case.
 
 II.
 
 13
 Section 505 of the ADA states that: "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee . . .." 42 U.S.C. S 12205. The Rehabilitation Act contains an almost identical provision. See 29 U.S.C. S 794a(b) ("In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.").
 
 
 14
 The district court noted that the Supreme Court has held that a "plaintiff is considered a `prevailing party'" if "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Brinn v. Tidewater Transp. Dist. Comm'n, 105 F. Supp. 2d 500, 503 (E.D. Va. 2000) (quoting Farrar v. Hobby, 506 U.S. 103, 111-12 (1992)). The court then held that"[t]here is no question that the settlement meets the Farrar criteria," and therefore plaintiffs "prevailed" for attorney's fees purposes. Brinn, 105 F. Supp. 2d at 503; see also S-1 and S-2 v. State Bd. of Educ. of North Carolina, 21 F.3d 49, 51 (4th Cir. 1994) (relief on the merits need not be in the form of a judgment, but may also include comparable relief through a consent decree or settlement agreement). Tidewater apparently does not challenge these holdings but it nonetheless asserts that state and federal law prohibit any award of attorney's fees in this case.[1]
 
 A.
 
 15
 Tidewater principally contends that Virginia law bars any award of attorney's fees in this case. Tidewater relies on one subsection of the Virginians with Disabilities Act (VDA), which states: "In any action in which the petitioner is represented by the Department for the Rights of Virginians With Disabilities, no attorneys' fees shall be awarded, nor shall the Department for Rights of Virginians With Disabilities have the authority to institute any class action under this chapter." Va. Code S 51.5-46(D). According to Tidewater, subsection
 
 
 16
 (D) prohibits any court -state or federal -from awarding attorney's fees in any action in which the plaintiff is represented by DRVD -even if that action is one, like the case at hand, brought exclusively under federal law. We find this argument unpersuasive.
 
 
 17
 Tidewater's argument ignores the remainder of S 51.5-46, the authoritative construction of that statute by the Supreme Court of Virginia, and other provisions of state law, all of which indicate that subsection (D) applies only to actions brought under the VDA. Section 51.5-46 constitutes the remedies provision of the VDA; indeed, it is entitled "Remedies." See Va. CodeS 51.5-46. Subsection (A) of S 51.5-46 gives Virginia chancery courts jurisdiction over VDA claims with the ability to provide equitable relief, compensatory damages, and attorney's fees; subsection (B) sets the statute of limitations for VDA claims; and subsection (C) provides that the only relief for violations of the VDA is that set forth in this section. Viewed in this context, as the last of four subsections in the section outlining "[r]emedies" under the VDA, subsection (D)'s prohibition against attorney's fees "in any action" in which a petitioner is represented by DRVD surely seems intended only to preclude attorney's fees in DVRD cases brought under the VDA.[2]
 
 
 18
 Furthermore, the Supreme Court of Virginia has interpreted the VDA as containing no limitations on cases brought under federal law. Not only has the court expressly held that S 51.5-46(C) contains no such limitations, but it has generally opined that"[w]hile it is true that the VDA and the federal Rehabilitative [sic] Act of 1973 have similar purposes, nothing in the VDA expressly makes either the federal Act part of the VDA's statutory scheme or the provisions of the one applicable to the other." Braddick v. Grumman Data Sys. Corp., 254 Va. 156, 160, 486 S.E.2d 545, 547 (1997). Moreover, if the Virginia General Assembly had truly intended to prohibit DRVD from receiving attorney's fees in an action brought under federal law, it likely would have done so in S 51.5-37, the statute creating DRVD. See Va. Code S 51.5-37. But, in fact, rather than prohibiting such an award, that statute specifically authorizes DRVD to pursue generally "legal remedies," on behalf of disabled persons, under both federal and state law. Va. Code S 51.5-37.
 
 
 19
 But there is yet another, even more compelling, reason why we decline to hold that the VDA does not limit the award of attorney's fees in actions, like this one, brought exclusively under federal law -to do so would violate the Constitution. Such an interpretation would surely run afoul of the Supremacy Clause. See U.S. Const. art. VI, cl. 2. A simple statement of Tidewater's claim reveals this difficulty. Tidewater urges us to hold that, despite the ADA and the Rehabilitation Act's specific grant of discretion to federal courts to award attorney's fees to prevailing plaintiffs, a Virginia statute prohibits federal courts from exercising that discretion in certain cases.
 
 
 20
 Although "federal courts are appropriately reluctant to displace state law," the Supremacy Clause mandates that federal law supersedes state law that either directly or by implication conflicts with federal law. See Metro. Life Ins. Co. v. Pettit , 164 F.3d 857, 861 (4th Cir. 1998). Such a conflict arises when "the state law stands as an obstacle to the accomplishment of the full purposes and objectives of the relevant federal law." Nat'l Home Equity Mortgage Assoc. v. Face, 239 F.3d 633, 636-37 (4th Cir. Feb. 7, 2001) (internal quotation marks omitted). That is precisely what would result if we were to construe S 51.5-46(D) as Tidewater contends we should. With the passage of S 505 of the ADA and S 794a of the Rehabilitation Act, Congress plainly intended to give federal courts discretion to award attorney's fees in ADA and Rehabilitation Act actions where appropriate; to adopt Tidewater's argument, would be to permit a state statute to limit that grant of discretion. Put another way, the state statute would "stand as an obstacle" to Congress's intent to give federal courts discretion to award attorney's fees to any entity they deem appropriate, other than the United States.
 
 
 21
 We note that, in a related context, namely attorney's fee awards under 42 U.S.C. S 1988,[3] courts have expressly held that government officials may not refuse to pay attorney's fees on the ground that a state statute forbids them from doing so. See Spain v. Mountanos, 690 F.2d 742, 746 (9th Cir. 1982) ("[A] state cannot frustrate the intent of section 1988 by setting up state law barriers to block enforcement of an attorney's fees award."); Gates v. Collier, 616 F.2d 1268, 1272 (5th Cir. 1980) (same). Cf. New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 67 (1980) (authorizing attorney's fees for prevailing Title VII claimant in state administrative and judicial proceedings despite lack of state law authorization because"Congress' power under S 5 of the Fourteenth Amendment . . . overrides any interest the State might have in not authorizing awards for fees").
 
 
 22
 To permit states to exempt local governmental entities from liability for attorney's fees awarded by a federal court, pursuant to a federal statute, would allow a state legislature to override a Congressional enactment.[4] A state statute that thwarts a federal court order enforcing federal rights "cannot survive the command of the Supremacy Clause." Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n, 443 U.S. 658, 695 (1979).
 
 
 23
 In short, adopting Tidewater's argument would contravene "the command of the Supremacy Clause," which we refuse to do. Furthermore, given that state law itself strongly indicates that S 51.5-46(D) prohibits DRVD from collecting attorney's fees awards only in cases arising under the VDA, we have absolutely no reason to adopt Tidewater's constitutionally dubious interpretation of subsection (D). See Jones v. United States, 529 U.S. 848, 120 S. Ct. 1904, 1908 (2000); Ashwander v. TVA, 297 U.S. 288 (1936).
 
 B.
 
 24
 Tidewater's remaining contentions are less novel but no more persuasive.
 
 
 25
 First, Tidewater maintains that no fees can be awarded in this case because the United States is prohibited from receiving attorney's fees when it prevails on ADA or Rehabilitation Act claims, and according to Tidewater, DRVD is a direct agent of the United States and therefore barred from recovery of fees. See 29 U.S.C. S 794e(f)(1) (authorizing appropriations to states that elect to participate in statutory scheme by "hav[ing] in effect a system to protect and advocate the rights of individuals with disabilities"). Tidewater is correct that the United States is barred from obtaining fees, when it is the prevailing party in ADA and Rehabilitation Act claims. See 42 U.S.C. S 12205; 29 U.S.C. S 794a(b). But that bar does not effect the award of fees here because the prevailing parties in this case are Brinn, Jess up, Jackson, Williams, and the other members of the class. DRVD, which is simply their counsel, is not the prevailing party. Moreover, even if DRVD were the "prevailing party" in this litigation, the ADA and the Rehabilitation Act still would not preclude DRVD from receiving attorney's fees because DRVD is not an agent of the United States. The mere fact that DRVD receives federal funding, or must comply with federal standards, is not sufficient to transform DRVD, a state agency, into an agent of the United States when the federal government has no power to control its day-to-day operations. See, e.g., United States v. Orleans, 425 U.S. 807, 819 (1976); Williams v. United States, 50 F.3d 299, 306 (4th Cir. 1995).
 
 
 26
 Tidewater also argues that no attorney's fees may be awarded in this case because the plaintiffs were provided legal representation by a state agency free of charge. But courts have consistently held that entities providing pro bono representation may receive attorney's fees where appropriate, even though they did not expect payment from the client and, in some cases, received public funding. See, e.g., Blum v. Stenson, 465 U.S. 886, 893-95 (1984) (upholding use of prevailing market rates to calculate attorney's fee award to Legal Aid Society in civil rights action); Johnson v. Lafayette Fire Fighters Ass'n Local 472, 51 F.3d 726, 732 (7th Cir. 1995) (attorney's fees to private foundation); Alexander S. By and Through Bowers v. Boyd, 929 F. Supp. 925, 928-29 (D.S.C. 1995), aff'd sub nom. Burnside v. Boyd, 89 F.3d 827 (4th Cir. 1996) (attorney's fees to state agency).
 
 
 27
 Finally, Tidewater maintains that DRVD's failure to engage in formal mediation with Tidewater prior to resorting to litigation, see Va. Code S 51.5-37, is a "special circumstance" that renders an award of attorney's fees unjust. See Newman v. Piggie Park Enter., 390 U.S. 400, 402 (1968). That argument too fails. First, Tidewater waived any objection to DRVD's failure to invoke formal mediation before filing the complaint by not raising this defense in its answer or any pretrial motion. See Zipes v. Trans World Airlines, Inc. , 455 U.S. 385, 389 (1982) (requirement that claimant timely file administrative complaint prior to bringing suit subject to waiver by defendant's failure to raise objection). Moreover, S 51.5-37 does not require that DRVD engage in formal mediation procedures prior to filing suit; rather, it simply states that DRVD has a duty to "employ mediation procedures to the maximum extent possible to resolve complaints." Va. Code S 51.537(3) (emphasis added). DRVD did that here; it contacted Tidewater, and engaged in a series of negotiations with Tidewater in the hopes of reaching a settlement prior to filing suit. Only when Tidewater repudiated its earlier agreement to bring its provision of paratransit services into compliance with federal law, effectively ending negotiations, did the plaintiffs, represented by DRVD file suit.
 
 III.
 
 28
 For the reasons set forth above, the judgment of the district court is
 
 
 29
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 In its reply brief, Tidewater seems to suggest (for the first time) that the plaintiffs may not have prevailed on much because, "[c]onsidering the fact that [Tidewater] had already agreed before the litigation to bring its paratransit service within full compliance of the ADA and the Rehabilitation Act, the causal connection between the litigation and the voluntary injunction called for in the settlement agreement is weak, at best." Reply Brief at 10-11. At oral argument, Tidewater appeared to back off this contention; moreover, since it was not raised until the reply brief, we need not linger over it. See Cavallo v. Star Enter., 100 F.3d 1150, 1152 & n.2 (4th Cir. 1996) ("[A]n issue first argued in a reply brief is not properly before a court of appeals."). But we do note that the district court expressly found that although Tidewater, through its Executive Director, initially agreed to comply fully with federal law, it subsequently "repudiated" the "most important provisions" of the agreement it had initially made, requiring the plaintiffs to resort to litigation. The record amply supports this finding; indeed, a comparison of Tidewater's initial July 16 agreement and its August repudiation of that agreement makes this conclusion inescapable.
 
 
 [2]
 The fact that subsection (D) addresses fees sought by a "petitioner" also suggests the limit of the subsection's application. The VDA refers to a claim brought pursuant to it as a petition, and to one bringing such a claim as a petitioner. See S 51.5-46(A) ("Any circuit court having chancery jurisdiction and venue . . ., on the petition of any person with a disability, shall have the right to enjoin the abridgement of rights set forth in this chapter.") (emphasis added). Thus, the use of the word "petitioner" indicates that subsection (D)(like the remainder of S 51.5-46) applies only to a VDA "petitioner," not to an ADA or Rehabilitation Act plaintiff.
 
 
 [3]
 Because of the scarcity of case law interpreting S 12205 and S 794a(b), courts faced with the task have relied on the body of law interpreting federal civil rights attorney's fees provisions. See Bercovitch v. Baldwin Sch., Inc., 191 F.3d 8, 10-11 (1st Cir. 1999) (attorney's fee provision in ADA intended to be interpreted consistently with other civil rights laws); Homeward Bound, Inc. v. Hissom Mem'l Ctr., 963 F.2d 1352, 1354 n.1 (10th Cir. 1992) (standards for awarding attorney's fees to prevailing party in civil rights actions applicable to fee awards under Rehabilitation Act); Robins v. Scholastic Book Fairs, 928 F. Supp. 1027, 1036 (D. Or. 1996), aff'd, 116 F.3d 485 (9th Cir. 1997) (noting the scarcity of judicial interpretation of 42 U.S.C. S 12205, and relying on legislative history, which suggests that Congress intended that S 12205 would operate in the same manner as S 1988).
 
 
 [4]
 Tidewater suggests in passing that it would enjoy Eleventh Amendment immunity from liability for attorney's fees if, in Garrett v. Univ. of Ala., 193 F.3d 1214 (11th Cir. 1999), cert. granted, 120 S. Ct. 1669 (2000), the Supreme Court "should hold" that"Title I and Title II of the ADA exceed Congress's enforcement authority under Section 5 of the 14th Amendment." Reply Brief at 17-18. But, the Supreme Court's holding in Garrett, ___ U.S. ___, 2000 WL 33179681 (Feb. 21, 2001), provides no assistance to Tidewater because Tidewater is not an arm of the state. Eleventh Amendment immunity is only available to the state and its "arms," not county or municipal entities or agencies, like Tidewater. See Will v. Mich. Dept. of State Police, 491 U.S. 58, 70-71 (1989); Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977). As Tidewater conceded in its Answer, its memorandum below, and in its briefs before us, it is a local transportation district commission, not a state agency. The Virginia Code provides that "counties or cities, or combinations thereof" may create corporate bodies known as "transportation districts," S 15.2-4504, which shall be managed by such a commission appointed by "the governing body of each participating county or city," S 15.2-4507, and funded by appropriations from these counties and cities, S 15.2-4524, and by bonds issued by the individual district, S 15.24519. "Except for claims cognizable under the Virginia Tort Claims Act, no pecuniary liability of any kind shall be imposed on the Commonwealth . . . because of any act, agreement, contract, tort, malfeasance, misfeasance, or nonfeasance" of a local transportation district commission and the obligations of a commission "shall not be in any way a debt or liability of the Commonwealth." Va. Code S 15.2-4526 (citation omitted).